## MACCAW v. CRAWLEY.

1. LIMITATION OF ACTIONS.—When the statute of limitations begins to run against a resident of this State, his voluntary removal therefrom will not arrest its currency. *Code, secs. 108 and 121, construed.*

2. SPECIFIC PERFORMANCE.—In actions of specific performance it is not necessary for plaintiff to have perfect title, but he is only required to show a good marketable title.

Before GARY, J., Charleston, May, 1900.    Affirmed.

Action for specific performance by Mary Maccaw against Louisa A. Crawley. The following is the report of Master Sass:

"This case was referred to me by an order of this Court, filed 20th December, 1899, 'to take testimony and report upon all the issues of law and of fact involved in the pleadings, with leave to report any special matter.' I respectfully report: I have been attended by counsel, have held references and taken testimony, which is hereto annexed. This is an action for the specific performance of a contract for the purchase of the premises No. 37 Legare street, Charleston, S. C. The complaint alleges that the plaintiff was, on and before the 6th day of November, 1899, the owner in fee simple of the premises described; that on that day the defendant entered into an agreement in writing with the plaintiff to purchase said premises on the following terms, to wit: $3,000 cash, with one-sixth of the State and county taxes for the year 1899, and $25 for papers; that plaintiff is ready to perform the agreement on her part, has tendered a deed of conveyance, and defendant has refused to accept the same. The prayer is that defendant perform said agreement and pay to the plaintiff the said purchase money. The answer of the defendant admits the agreement, but denies that the plaintiff has and can convey a good title to the premises. The issue is upon the question of Miss Maccaw's title. It appears by the testimony submitted that she is in possession as devisee under the will of Mrs. Mary C. Wagner, proved

before the ordinary of Chatham County, Ga., April 14, 1898, and an exemplification thereof recorded in the probate court of Charleston County. Mary Maccaw, named as executrix, duly qualified and the proper steps for calling in creditors and settling the estate were taken. We must, therefore, see what title Mrs. Mary C. Wagner had. The testimony shows that the property was purchased by the late Mr. Theodore D. Wagner and a deed of conveyance made to him by George I. Crafts *et al.,* executors, dated 2d November, 1855, and recorded in the mesne conveyance office, Charleston, in book R, No. 13, page 167. Some time afterwards, 'two or three years before the war,' Mr. Theodore D. Wagner turned over the house to his brother, Wm. H. Wagner, and his wife, Mrs. Mary C. Wagner, and they occupied it certainly up to the time of the war. William H. Wagner died in 1863, leaving no children; the property stood on the tax books of the county auditor's office from 1858, the earliest book preserved, to 1868, as the trust estate Mrs. Mary C. Wagner. It was generally understood in the family that it belonged to Mrs. Mary C. Wagner; she lived after the war in Savannah, and up to the time of his death, February, 1880, Mr. Theodore D. Wagner regularly remitted the rents to her. During the last two years of his life he was paralyzed and unable to write, but continued to send the rent through some member of the family. Mr. Wagner was adjudged a bankrupt on 31st August, 1878, and discharged 22d November, 1878. His assignee was discharged 25th March, 1879. This property does not appear on the schedule of assets, and was never taken possession of by the assignee. The property having been forfeited for taxes, was bought at the sale by Mrs. Mary C. Wagner, who under the law then in force received a patent for the same executed by the governor, and with the great seal of the State attached, dated 4th day of January, 1880, which was recorded in the office of the secretary of State on the 7th July, 1880, and on the same day in the mesne conveyance office, Charleston, in book V., No. 17, page 15. After the death of Mr. Wagner, Mr. John

Hanckel took charge of the property for Mrs. Mary C. Wagner, and on his death, in 1886, the charge devolved on his son, Mr. Francis S. Hanckel, whose testimony has been taken in this case. The property since the issuing of the patent above referred to was leased in Mrs. Wagner's name, the rents were remitted to her, and when they were insufficient, money was sent from Savannah by her and expended on repairs, etc.

"As to the persons who might have any claim upon the property.—The heirs of Wm. H. Wagner besides his widow were his brothers and sisters, who were all of age at the time of his death, and have long since been barred. The creditors of Mr. Theodore D. Wagner are barred as well by the lapse of time as by his discharge in bankruptcy. His heirs were his widow, who died in 1893, his son, Wm. H. Wagner, who was thirty-one years of age at the time of his father's death, and died in 1898; his daughters—Mrs. Talley, who is now about thirty-six years of age, Mrs. E. O. Woods, now about thirty-five years, and Mrs. Clayton Woods, who was thirty-one years of age on the 21st August, 1899, and thus under section 98 of the Code of Procedure had lost her right of action before the making of the contract of sale.

"It is claimed on the part of the plaintiff, first: That there was so clear an intention shown by Mr. Wagner to give this property to his sister-in-law that a Court of Equity would presume this intention carried out and the title actually passed. The evidence goes to sustain this view; but inasmuch as such intention could at any time have been carried out by the execution of a deed of conveyance, it can only be taken as corroborative of Mrs. Wagner's possession. Second. That Mrs. Wagner's possession was long enough to presume a grant or deed. This again must be taken as showing the uninterrupted and quiet occupation and the acquiescence of parties who might have a claim or interest. And third. That the possession from the time of the issuing and recording of the patent in 1880 was open, notorious and such as to make distinctly adverse possession which has now

ripened into title, and this I hold to be fully sustained. The plaintiff, then, having title by possession, can she under such title maintain the present action? Under the authority of the case of *Busby* v. *R. R. Co.,* 45 S. C., 317, the principles of which decision are also found in *Harrelson* v. *Sarvis,* 39 S. C., 14; *Cave* v. *Anderson,* 50 S. C., 293, and *Duren* v. *Kee,* 56 S. C., 444, our Courts have held that a title by possession may be asserted affirmatively and not merely as a defense, and that one may maintain an action for the recovery of real estate or for damages to real estate upon the strength of such a title. This being so, it seems clear that an action for the specific performance of a contract relating to real estate can be equally maintained; and as the contract in this case is admitted, I hold that it must be enforced. I, therefore, recommend that the prayer of the complaint be granted, and the defendant be required to comply with her agreement for the purchase of the premises described."

From Circuit decree confirming this report, the defendant appeals.

*Messrs. Smythe, Lee & Frost,* for appellant, cite: *Cases cited by Circuit Judge:* 53 S. C., 38; 57 S. C., 392, *are foreclosure cases and do not apply.*

*Mr. Arthur Mazyck,* contra, cites: *Plaintiff holds title by adverse possession and Stat. of Lim.:* Code, 98; 48 S. C., 293. *Title of plaintiff is good and marketable, and Court will decree specific performance:* 5 Rich. Eq., 570; 6 Rich. Eq., 222; 24 S. C., 487; 48 S. C., 282; 11 Rich. Eq., 227; 57 S. C., 393. *Action for specific performance may rest on title by adverse possession:* 39 S. C., 14; 45 S. C., 312; 50 S. C., 293; 56 S. C., 444; 56 N. Y., 344. *Statute having commenced to run, no subsequent disability will arrest it:* 3 Brev., 286; 1 N. & McC., 296; 35 S. E. R., 941.

March 4, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.    This was an action to en-
force the specific performance of a contract for the sale of a
lot on Legare street, in the city of Charleston, designated as
lot No. 37.    By consent, an order was passed referring it to
G. H. Sass, Esq., one of the masters for Charleston County,
to take the testimony and report upon all the issues of fact,
with leave to report on any special matter.    In obedience to
this order the master took the testimony, which is set out in
the "Case," and made his report, recommending that the
prayer of the complaint be granted, and that the defendant
be required to comply with her agreement for the purchase
of the premises described in the complaint.    To this report
the defendant filed sundry exceptions, and the case was heard
by his Honor, Judge Ernest Gary, who rendered judgment
confirming the report of the master.    From this judgment,
defendant appeals upon the several exceptions set out in the
record.    The report of the master, containing as it does a
full and clear statement of the fact, should be incorporated
by the Reporter in his report of the case, and this will super-
cede the necessity of making any detailed statement of the
facts here.

As we understand it, the only real controversy in the case
is whether the plaintiff has a good title to the lot in question,
such a title as the Court of Equity will require the defendant
to accept under the contract for the sale thereof, as to the
terms of which there is no dispute.   The undisputed facts
are that the late Theodore D. Wagner acquired the title to
said lot on the 2d of November, 1855, that some two or
three years before the war between the States, the said The-
odore D. Wagner put his brother, the late Wm. H. Wagner,
together with his wife, Mrs. Mary C. Wagner, in possession
of the said premises, where they probably remained until the
death of said Wm. H. Wagner, who died in 1863.    That
after the close of the war, Mrs. Mary C. Wagner removed to
the city of Savannah, in the State of Georgia, where she con-
tinued to reside up to the time of her death, in 1897; that after
she removed to Savannah, the late Theodore D. Wagner

regularly collected the rents of the said lot up to the time of his death on the 24th of February, 1880, and remitted the same to the said Mary C. Wagner; that after his death, the said rents were collected and remitted to the said Mary C. Wagner by the late John Hanckel, a brother-in-law of the said Theodore D. Wagner; that after the death of the said John Hanckel in 1886, his son, F. S. Hanckel, continued to collect said rents regularly and remitted the same to the said Mary C. Wagner, and also had charge of the said lot as her agent, and as such made leases of the same, and after the earthquake applied money received from her to repair the house—made returns and paid the taxes as her agent, and never heard of any question as to her ownership of the property. In addition to this, the undisputed testimony shows that the said Theodore D. Wagner was adjudged a bankrupt on the 31st of August, 1878, and was discharged on the 22d of November, 1878, and the property in question was not included in his schedule of assets. This affords strong evidence that he did not then regard the property, which had been treated by him as the property of his sister-in-law, as any part of his own property. But it also appears from the undisputed testimony that the lot in question was sold for taxes and bought by Mary C. Wagner, who, on the 4th of January, 1880, received a patent (as it is termed) from the State, signed by the governor and by the secretary of State, which was recorded in the office of the secretary of State on the 7th of July, 1880, and on the same day in the office of the register of mesne conveyances for Charleston County. This was a clear assertion of title, adverse to all the world, and from that time forward she held such possession up to the time of her death in 1897; and the plaintiff is now in possession as devisee, under the will of the said Mary C. Wagner, which was admitted to probate in the proper office in Georgia on the 14th of April, 1898, and an exemplification thereof recorded in the office of the probate court for Charleston County.

It is contended, however, that the title of the plaintiff by

adverse possession is liable to be defeated by the minority
and other disabilities of some of the parties, who may set up
a claim to the property.    Inasmuch as no one claims that the
said Wm. H. Wagner—the brother of the late Theodore D.
Wagner—ever acquired a title to the property in question, it
is scarcely necessary to consider whether any of his heirs at
law could now, with any prospect of success, make any claim
to the property, though we may say that we do not think that
they or any of them have any claim.

It is contended, however, that one, at least, of the heirs of
Theodore D. Wagner, to wit: his oldest daughter, Mrs.
Talley, would be protected, by minority connected with her
absence from the State, from plaintiff's claim by ad-
verse possession.    But we do not see how such a
position can be sustained.    The undisputed testimony
is that Mrs. Talley attained her majority in 1885, when she
was a resident of this State.    The statute of limitations,
therefore, certainly commenced to run against her in 1885,
and continued to run, at least, until 1893, when she volun-
tarily removed to the State of Texas, where she still resides.
So that the precise question is, whether, after the statute has
once commenced to run against a person, the voluntary
removal of such person from the State will suspend the cur-
rency of the statute.    The well settled rule is that where the
statute has once commenced to run, no intervening disability
(except infancy) will stop the currency of the statute.
*Fewell* v. *Collins,* 3 Brev., 286; *Adamson* v. *Smith,* 2 M.
Con. Rep., 269; *Faysoux* v. *Prather,* 1 N. & McC., 296; and
these cases are cited with approval in *Shubrick* v. *Adams,*
20 S. C., at page 52.    The only exception to this rule, so
far as we are informed, is that noted above in parenthesis,
which was expressly provided for by the act of 1824.    So
that even if absence from the State be regarded as a disa-
bility of which a plaintiff can take advantage (which we
are not prepared to admit), the voluntary removal from the
State by Mrs. Talley would not suspend the currency of the
statute which had been running for about eight years before

her removal, would not be sufficient to protect her from the operation of the statute, and hence she is barred now, and was barred at the time the contract in question was entered into.

Counsel for appellants, however, contend that, under secs. 108 and 121 of the Code, Mrs. Talley could claim exemption from the operation of the statute of limitations; but we do not see that either of these sections have any application to this case. Sec. 108 provides that if a person entitled to commence an action for the recovery of real property, "be, at the time such title shall first descend or accrue," laboring under three specified disabilities, to wit: infancy, insanity or imprisonment, the time during which *such* disability shall continue shall not be deemed any portion of the time limited for the commencement of such action, but such action may be commenced after the period of ten years and within ten years after the disability shall cease. Now, while Mrs. Talley was laboring under the disability of infancy at the time the title descended to her upon the death of her father, in 1880, yet as such disability terminated in 1885, she could claim no exemption from the operation of the statute after 1895—ten years after her disability ceased. So it is clear that the provisions of sec. 108 will not now, and would not at the date of the contract—6th November, 1899—give her any protection from the operation of the statute. Sec. 121 only provides that where a person *against* whom a cause of action has accrued is absent from the State at the time, or if thereafter he shall depart from the State, "the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." But the section contains no such provision for the protection of a person *in whose favor* a cause of action has accrued, and the reason for this is very obvious; where a person against whom it is desired to bring an action leaves the State and places himself beyond the reach of the process of the Courts of this State, it is nothing but right to deprive him of the right to claim the benefit of the time during which

he is out of the State, where he could not be reached by the process of the Court—could not be sued. No such reason applies in case of a person who resides beyond the limits of the State, having a cause of action against another, and who desires to bring such action, for there is nothing to prevent such a person from commencing his action whenever he desires to do so; and hence there is no reason why he should be allowed to deduct the time during which he chooses to remain absent from the State from the statutory period prescribed by law. Indeed, it seems to us a very novel and unreasonable proposition, that a person who has a claim against a citizen of this State, can keep such claim alive indefinitely, perhaps for years, by simply removing beyond the limits of the State.

We are of opinion that even if the plaintiff has not shown an absolutely perfect title to the lot in question, she has shown, at least, that she has a good, marketable title, which is all that the law requires in a case of this kind. See. *Thompson* v. *Dulles*, 5 Rich. Eq., 370; *Laurens* v. *Lucas*, 6 Rich. Eq., 217; *Webb* v. *Chisolm*, 24 S. C., 487; *Miller* v. *Cramer*, 48 S. C., 282.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.