20644

SALES INTERNATIONAL LIMITED, Appellant, v. BLACK RIVER FARMS, INC., E. E. Dargan & Sons, and E. E. Dargan, Individually, Respondents.

(242 S. E. (2d) 432)

392

*James H. Watson* and *J. D. Todd, Jr.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for Appellant,*

*John P. Gardner,* and *John P. Gardner, Jr.,* of *Gardner, & Gardner,* Darlington, and *Albert L. James, III,* of *Pauling & James,* Darlington, *for Respondents,*

March 16, 1978.

NESS, Justice:

This appeal is from an order requiring appellant to specifically perform a contract for the sale of land. We affirm.

Sales International Limited, appellant, contracted with respondents to purchase over 4,000 acres of land in the Black River Swamp of Clarendon County for approximately $2,000,000.00. The sum of $25,000.00 was paid by buyer to seller as an earnest money deposit. Prior to the closing, appellant sought return of the $25,000.00 deposit. Respondents refused and this litigation ensued.

Three primary issues are raised on appeal, to wit:

(1) Whether respondents were possessed of a good and merchantable fee simple title to the subject property;

(2) Whether appellant was entitled to rescind the contract under provision four thereof dealing with mineral rights; and

(3) Whether the respondents had complied with provision six of the contract which required respondents to obtain permission from Georgia-Pacific, an adjoining landowner, to construct a drainage canal.

## I. THE MARKETABILITY OF RESPONDENTS' TITLE

A chronological examination of conveyances concerning the particular tract in question is necessary to understand appellant's objection to the quality of respondents' title.

The approximately 4,000 acre subject tract was carved from a 6,000 acre tract conveyed to Gable School District No. 35 (Gable) in 1931 by Carolina Cypress Company. Two other properties not involved here, a 2,300 acre tract located in Clarendon and Sumter Counties and a 59 acre tract in Clarendon County were also conveyed to Gable at that time.

In 1935 Gable conveyed to Turbeville School District No. 20 (Turbeville) certain property located in Clarendon and Sumter Counties. The deed specifically described the 2,300 acre and 59 acre tracts and contained the following language:

"ALSO the right, title and interest of the Grantor in and to all lands, timber, easements, rights of way and other rights in real estate and easements of the grantor herein both at law and in equity, whether herein specifically enumerated or not, in the said two Counties in said State." (Plaintiff's Exhibit 15.)

It is appellant's position that the above language conveyed the 6,000 acre tract (from which the 4,000 acre tract in controversy was carved) to Turbeville.

Thereafter in 1945, Turbeville conveyed to R. Barnwell Clarkson, Geddings H. Crawford, D. Jennings Lucas, and Spencer R. McMaster (Clarkson, *et al.*) the 2,300 acre and the 59 acre tracts.

This language followed the specific description of those two tracts:

"It being the intention of the grantors herein to convey all the real estate conveyed to them by deed of T. R. Wilson, *et al.*, as Trustees for School District No. 35, dated February 20, 1935 and recorded in the office of the Clerk of Court for Clarendon County, South Carolina, in Deed Book A-11, at page 752." (Plaintiff's Exhibit 16.)

In 1946, Gable School District No. 35 conveyed to respondents' predecessor, Black River Investment Company, the property at issue. The deed specifically described the 6,000 acre tract of swampland. Respondents trace their title from this deed.

Appellant asserts the foregoing deeds raise a question of whether or not Gable owned any interest in the 6,000 acre tract in Black River Swamp in 1946 when it purported to convey it to Black River Investment Company. Appellant contends Gable had previously conveyed the 6,000 acre tract

to Turbeville School District No. 20 by way of the general language contained in the 1935 deed and that Turbeville then conveyed the property to Clarkson, *et al.,* in 1945.

■ We believe the court was correct in admititng parol evidence to remove the latent ambiguity created by the 1935 Gable-Turbeville deed. *Stephens v. Long & Bellamy,* 92 S. C. 65, 75 S. E. 530 (1912) ; *Richardson v. Register,* 227 S. C. 81, 87 S. E. (2d) 40 (1955) ; *Smith v. DuRant,* 236 S. C. 80, 113 S. E. (2d) 349 (1960).

■ We agree with the lower court's conclusion that Gable School District No. 35 retained the 6,000 acre tract until 1946 when it was conveyed to Black River Investment Company. The record reveals there was no intention to convey or receive the 6,000 acre tract in the 1935 Gable-Turbeville deed. Gable continued to use the land until it was conveyed to respondents' predecessor in 1946. In 1962, East Clarendon School District No. 3, successor to Turbeville School District No. 20, quitclaimed to Black River Investment Company any interest Turbeville might have received as a result of the 1935 deed.

Appellant, however, contends the 1962 quitclaim deed was of no effect because in 1945, Turbeville had conveyed the tract to Clarkson, *et al.* This thesis is untenable. The records of Clarendon County show that Clarkson, *et al.,* never paid any taxes on any property in Gable School District No. 35, in which the subject land is located. In fact, there was testimony that Messrs. Clarkson, *et al.,* attempted to buy the 6,000 acre tract from Gable at the time they purchased the 2,300 acre and 59 acre tracts from Turbeville.

Moreover, appellant produced no evidence to support a contention that R. Barnwell Clarkson, D. Jennings Lucas, Geddings H. Crawford or Spencer R. McMaster, their successors, heirs or distributees, ever indicated a claim to the subject property.

The lower court held that the 1945 Turbeville-Clarkson, *et al.,* deed conveyed only the land therein specifically de-

scribed and did not convey any of the subject property. The court concluded record title vested in Black River Investment, respondents' predecessor, not only by the 1946 deed from Gable but also by the 1962 quitclaim deed from the successor to Turbeville.

Appellant also questions the sufficiency of respondents' title because of the following language contained in the *habendum* clause of the 1931 deed from Carolina Cypress Company to Gable: "for the sole use and benefit of a school to be operated at Gable, South Carolina." This Court held in the Furman University cases that a similar clause containing no provision for reverter or re-entry creates no right in the grantor or its successors but is declaratory of the purpose of the deed only. *Furman University et al. v. Glover et al.,* 226 S. C. 1, 83 S. E. (2d) 559 (1954) ; *Furman University v. McLeod,* 238 S. C. 475, 120 S. E. (2d) 865 (1961). See also *McManaway v. Clapp,* 150 S. C. 249, 148 S. E. 18 (1928). Accordingly, the lower court properly ruled that respondents' title could not be rendered unmarketable on that basis.

It is axiomatic that a purchaser cannot be required to take a doubtful title. *Laurens v. Lucas,* 27 S. C. Eq. (6 Rich) 217 (1854) ; 77 Am. Jur. 2d, Vendor and Purchaser, § 168; 57 A. L. R. 1253, 1301, *et seq.* (1928). However:

"[T]he mere, bare possibility, or remote probabilities, that there may be litigation with respect to the title is not sufficient to render it unmarketable. There must be a reasonable probability of litigation." 57 A. L. R. 1253 at 1307-1308.

See also *Miller v. Cramer,* 48 S. C. 282, 26 S. E. 657 (1897) ; *Maccaw v. Crawley,* 59 S. C. 342, 37 S. E. 934 (1901). The evidence fails to reveal a reasonable probability of litigation surrounding the subject property.

The lower court further concluded that notwithstanding their record title, respondents' title was marketable on the

basis of a presumptive grant or adverse possession. This conclusion is amply supported by the record.

Thirty-two years have passed since Turbeville made the disputed conveyance to Clarkson, *et al.,* and during that time respondents and their predecessors have been in unchallenged possession. Testimony was presented by men who had worked on the subject property for respondents and their predecessors. F. E. Dubose testified that Gable School District No. 35 and Black River Investment Company sold cross ties from, and hunting and fishing rights on, the property. He testified further that Black River Investment Company paid taxes on the subject property. There was testimony by D. Cox, Jr., that he surveyed the land for respondents and discussed property lines with adjoining landowners.[1]

No evidence of any claim by the asserted owners was introduced by appellant.

The evidence established that from 1935 until the present, respondents and their predecessors in title were in such open and notorious possession of the subject property to acquire title by adverse possession and presumptive grant.

Accordingly, specific performance was properly decreed on the ground of respondents' title by adverse possession without regard to their record title. The contract specified only for "good and merchantable fee simple title to the property." As noted in 77 Am. Jur. (2d), Vendor and Purchaser, § 177, p. 355:

"Where, however, a record title . . . is not expressly contracted for, it is the general rule that a clearly established

[1] Moreover, David S. Mellichamp, President of Lawyers Abstract Company and Lawyers Title Insurance Corporation from 1948 to 1975, testified that based upon a review of the subject deeds and the facts presented at trial regarding payment of taxes and possession, respondents' title was insurable. Additionally, there was testimony concerning the digging of canals on the property, clearing 1,200 acres, farming the property, etc.

title by adverse possession or limitations . . . is marketable and is one which a vendee may be required to accept."

See also 46 A. L. R. (2d) 544, 548, § 3; 57 A. L. R. 1331, 1490, 1526.

Regarding the issue of the marketability of respondents' title, we conclude the decree of specific performance is sustainable either on the basis of respondents' record title or the title they acquired by adverse possession.

## II. THE MINERAL RIGHTS TO THE SUBJECT PROPERTY

A clause in the contract recognized the outstanding mineral rights affecting the property and afforded appellant an opportunity to investigate the existence and value of any minerals prior to the closing. Appellant invokes the following language from Condition Four of the contract in his effort to avoid performance: "The Buyer shall have the right to terminate this Contract if said geologist report is unsatisfactory to the Buyer." (Tr. p. 39).

The geologist's report indicated a 5 to 10 foot bed of sand which conceivably could be used for construction purposes. The record establishes that appellant's agents knew at the inception of the contract that a substrata of sand underlay the surface of the subject land. Nevertheless, appellant seeks to exercise its right to terminate the contract pursuant to Condition Four based on the geologist's report.

We believe the lower court properly refused to allow appellant to avoid the contract on this ground. The geologist's report states the sand deposits are not unique and of slight possible economic value. We construe the right to terminate the contract under Condition Four as being predicated on the event the geologist found some mineral condition of which the parties were unaware. The lower court's conclusion that " 'sand' could not possibly be defined as the kind of 'mineral'

to which an objection might be laid so as to avoid performance of the contract" expresses the view of this Court.[2]

## III. GEORGIA PACIFIC EASEMENT

Condition Six of the contract obligated the seller to obtain permission from Georgia Pacific Corporation and to run a forty foot wide canal from the southern boundary of the subject property through the Georgia Pacific property for a distance of one mile. Appellant's assertion that Condition Six required completion of the canal prior to closing is unpersuasive.

The lower court properly construed the condition as requiring the procurement of an easement from Georgia Pacific prior to the closing date but not requiring actual completion of construction of the canal by that time.

Prior to the proposed closing, respondents exhibited an easement from Georgia Pacific. We hold that procurement alone fulfills respondents' obligation under Condition Six, however we note the fact that the canal itself is now completed.

Appellant's objections to performance are insubstantial. Specific performance was properly decreed.

Affirmed.

Lewis, C. J., and Littlejohn, Rhodes and Gregory, JJ., concur.

[2] Additionally, this was an ordinary business transaction, not dependent on questions of taste or personal whim. The law requires such provisions to be exercised reasonably, in good faith. *Singleton v. Cuttino*, 105 S. C. 44, 89 S. E. 385 (1916); *Deering Milliken Research Corp. v. Textured Fibers, Inc.*, 310 F. Supp. 491 (D. C. S. C. 1970); 17 Am. Jur. (2d), Contracts, §§ 366 and 367.