**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLINTON DAVID, INCORPORATED, a
South Carolina Corporation;
MCMILLAN'S FLYING TIGERS,
INCORPORATED, RETIREMENT TRUST,
a/k/a McMillan's Flying Tigers,
Incorporated, Retirement Trust,

No. 98-1305

Plaintiffs-Appellees,

v.

LAWYERS TITLE INSURANCE
CORPORATION,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-96-980-2-18)

Argued: October 26, 1998

Decided: March 10, 1999

Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge,
and MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Griffin Vann Canada, Jr., MILES & STOCKBRIDGE,
P.C., Rockville, Maryland, for Appellant. Gedney Main Howe, III,

GEDNEY M. HOWE, III, P.A., Charleston, South Carolina, for Appellees. **ON BRIEF:** J. Stephen McAuliffe, III, MILES & STOCKBRIDGE, P.C., Rockville, Maryland; Michael W. Tighe, Louis H. Lang, CALLISON, TIGHE, ROBINSON & HAWKINS, Columbia, South Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Clinton David, Inc. ("Clinton David") and McMillan's Flying Tigers, Inc., Retirement Trust ("Trust") sued Lawyers Title Insurance Corporation ("Lawyers Title"), alleging that Lawyers Title breached its obligations under a title insurance policy. After a two-day bench trial, the district court granted judgment in favor of Clinton David and the Trust. Because the findings of the district court are not clearly erroneous, we affirm.

I.

Sometime during the 1970s, David McMillan, a Florida resident, began investing money for his retirement trust with one Paul Hoekenga, Jr. By the mid-1980s, McMillan and his retirement trust had accumulated approximately $1,400,000.

From 1986 to 1989, McMillan received approximately $12,000 per month from his investments. When Hoekenga stopped making payments, McMillan and his Retirement Trust sued Hoekenga in the United States District Court for the Middle District of Florida, inter alia, on the grounds of fraud and deceit, as well as for conversion and civil theft. In May 1990, McMillan obtained a default judgment against Hoekenga in the amount of $2,209,189.03. To enforce the default judgment, McMillan hired counsel to conduct proceedings in

2

California, where Hoekenga resided. During these supplemental proceedings in California, McMillan discovered that Hoekenga was the general partner of Columbia Properties Fund II Limited Partnership ("Limited Partnership") which owned Anchorage Apartments in Charleston, South Carolina ("Property"). Hoekenga claimed that the Limited Partnership owed him $1,150,735. This was reflected on the partnership tax return for the year 1989, which was provided to McMillan's lawyers.

Counsel for McMillan and Hoekenga then entered into a series of negotiations aimed at resolving the claim. Hoekenga had the partnership issue a note and second mortgage on the Property to him for the debt he claimed was due. Hoekenga then executed an assignment of the Demand Note and the Second Mortgage to McMillan and the Trust in partial satisfaction of the judgment against Hoekenga. Prior to this action, McMillan's attorneys obtained two opinion letters from two different attorneys regarding the validity of the Second Mortgage and the assignment. In essence, both letters opined that Hoekenga was indeed authorized to sign the documents and that the $1,150,735 obligation to Hoekenga from Columbia Properties Fund II was a valid, binding obligation.

On July 10, 1990, McMillan, without success, demanded payment of the debt, evidenced by the Demand Note. Therefore, McMillan and the Trust foreclosed on the note and second mortgage. The Property was sold at a foreclosure sale in May 1991. McMillan and the Trust purchased the Property at the foreclosure sale and assigned the bid to Clinton David, Inc. and the Trust on June 3, 1991. Upon the advice of the foreclosure attorney, Elizabeth Settle, appellees obtained a title insurance policy from Lawyers Title. The agent for Lawyers Title reviewed Ms. Settle's file, performed a title search, and on September 12, 1991, issued a policy commitment, effective June 3, 1991.

During the week of September 16, 1991, Ms. Settle was contacted by attorney John P. Linton, who informed her that he represented some of the limited partners in the Limited Partnership to investigate the validity of the Demand Note and the Second Mortgage which was assigned to McMillan by Hoekenga and foreclosed upon by Ms. Settle. Ms. Settle informed the agent for Lawyers Title about Mr. Lin-

3

ton's clients and their concern regarding the legality of the foreclosure.

Lawyers Title issued its policy to appellees on September 26, 1991 in the amount of $1,275,000, insuring that the fee simple title to the property was vested in Clinton David and the Trust effective June 3, 1991, subject to the Exclusions from Coverage contained on Schedule B of the Policy. J.A. II-747, I-200-207.

The insuring provisions of the Policy show that Lawyers Title agreed to indemnify Clinton David and the Trust against loss. Paragraph 3 of the Policy section, entitled Exclusions from Coverage, states that:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of: 3. Defects, liens, encumbrances, adverse claims or other matters; (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to [Lawyers Title] by the insured claimant prior to the date the insured claimant became an insured under this policy....

On March 19, 1992, sixteen limited partners of the Limited Partnership filed a Motion to Intervene and Set Aside Judgment in the Court of Common Pleas for Charleston County, South Carolina, in the foreclosure proceeding filed in 1991 by Ms. Settle on behalf of McMillan. The motion was based, in part, on the contention that the partnership records raised a question regarding the validity of the debt of the partnership to Mr. Hoekenga. Lawyers Title provided a defense on behalf of appellees on the grounds that the matter appeared to be a risk covered by their title policy. However, Lawyers Title also reserved its rights to deny coverage and liability under the Policy if the challenge to the title to the Property mounted by the intervening limited partners was successful as the result of overreaching or any "breach of fiduciary duty" by McMillan, which could then be imputed to Clinton David or the Trust through the agency of McMillan.

4

While the Court of Common Pleas did not make explicit findings of fact, it found that enough evidence existed to merit giving the limited partners a chance to review the situation. The court allowed the limited partners to reopen the matter and to intervene and assert defenses on behalf of the partnership due to "unanswered questions ... which questions warrant further judicial inquiry." J.A. I-297. This order to reopen the foreclosure was appealed to the South Carolina Court of Appeals, which affirmed. In January of 1995, the Supreme Court of South Carolina denied appellees' Petition for a Writ of Certiorari and remanded the case to the trial court. At this time, McMillan and the Trust discovered that the actual debt owed by the partnership to Hoekenga was, at best, around $300,000. Consequently, the parties entered into settlement negotiations prior to trial.

Letters among all sides were exchanged in an effort to reach a viable compromise. On February 24, 1995, G. Trenholm Walker, representing the appellees, wrote a letter to Lawyers Title conveying a settlement proposal he received from the limited partners for $700,000. Lawyers Title responded with a letter on February 27, 1995, stating that "[s]hould the Court set this matter aside, there is virtually no likelihood we would have a duty to indemnify." J.A. I-323. However, Lawyers Title agreed to contribute $50,000 in settlement of the matter.

On August 29, 1995, Mr. Walker wrote to Lawyers Title with a proposed amount of $600,000 to settle the claims between the limited partners and appellees. He indicated that McMillan was prepared to proceed with the settlement without the participation of Lawyers Title, "reserving his right to seek full indemnity from Lawyers Title." J.A. I-334. Lawyers Title responded with a letter dated September 5, 1995, stating that it "will therefore offer to Mr. McMillan, Clinton David, Inc., and McMillan's Flying Tigers, Inc. Retirement Trust $150,000 for a complete release of Lawyers Title from any claims arising from the matters currently being litigated," even though Lawyers Title believed the trial court had found evidence of wrongdoing by McMillan which would preclude coverage. This letter stated, "However, I do believe this is a matter that should be terminated," which Alexander Conlyn, author of the letter, said meant "settled." J.A. II-718. Significantly, Lawyers Title made no comment that it

5

would deny coverage if the case was settled without a limit of its liability to $150,000.

McMillan and the limited partners eventually reached a settlement amount of $600,000. No part of the settlement was paid by Lawyers Title. Appellees thereafter brought this action for indemnification from Lawyers Title. Lawyers Title filed a counterclaim to recover attorneys' fees and costs expended on behalf of Clinton David and the Trust in the claim asserted by intervening limited partners in the state court action. The case was tried in the United States District Court for the District of South Carolina, Charleston Division. After a two-day bench trial, the court awarded judgment to appellees in the amount of $600,000, in addition to prejudgment interest, attorneys' fees and costs and post-judgment interest. The court dismissed Lawyers Title's counterclaim for costs and attorneys' fees.

II.

We review the findings of fact by a district court for errors which are clearly erroneous. Fed. R. Civ. P. 52 (a). A finding is "clearly erroneous" when the reviewing court believes that a mistake has been committed, despite the existence of evidence to support the factual determination. Anderson v. Bessemer City, North Carolina, 470 U.S. 564, 573 (1984) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

Because this is a diversity case, we apply the substantive law of South Carolina, the state where the contract was formed. See Erie R.R. v. Tompkins, 304 U.S. 64, 78-80 (1938), including South Carolina's choice-of-law rules. See Klaxon Co. v. Stentor Mgf. Co., 313 U.S. 487, 496 (1941). In South Carolina, the interpretation of a contract is governed by the law of the place where the contract was made. Unisun Insurance Company v. Hertz Rental Corp., 436 S.E.2d 182 (S.C. Ct. App. 1993). The Policy, which is the contract at issue here, was made in South Carolina. Therefore, South Carolina law governs its interpretation.

III.

The appellant asserts that the district court made erroneous findings of fact when it held that Lawyers Title had no reasonable cause to

6

refuse payment of the claim asserted against McMillan and the Trust by the intervening limited partners. Appellant reasons that the state court's order reopening the foreclosure constituted a finding of fraud or collusion between McMillan and Hoekenga. Accordingly, appellant argues, it is precluded from providing coverage pursuant to subparagraphs 3(a) and 3(b) of the Policy's Exclusions from Coverage, which includes fraud, deceit and collusion as grounds for exclusion.

Despite the state court's order allowing the limited partners' intervention, this did not constitute a finding of fact which is binding on the parties. Consequently, no evidence was presented to demonstrate fraud, deceit, or any other factor which would bring the claim within the ambit of an exclusion or limitation of the policy. McMillan denied any collusion between him and Hoekenga. Absent such collusion or deceit, appellees were able to prove the existence of a defect, lien, encumbrance and unmarketability of title sufficient to apply the covered loss provisions of the Policy. See Sale Int'l Ltd. v. Black River Farms, Inc., 242 S.E. 2d 432, 435 (S.C. 1978) (stating that title is unmarketable if there is a reasonable probability of litigation). In addition, the trial court found that the appellees took reasonable steps to assure the validity of the debt evidenced by the note and second mortgage. Therefore, the trial court's finding that Lawyers Title had no reasonable cause to refuse payment of the claim is not clearly erroneous and must be upheld.

Alternatively, Lawyers Title argues that paragraph 9(c) of the Policy contains a "consent to settlement" provision which states that Lawyers Title is not obligated to provide coverage if they do not consent to the settlement. Appellants contend they did not consent to the settlement and rightfully denied indemnification on those grounds.

However, the exchange of letters between McMillan's lawyer and Lawyers Title concerning settlement of the state court action, with Lawyers Title encouraging settlement while not indicating that it would deny coverage if the case was settled, was sufficient for the trial judge to infer that Lawyers Title agreed to the settlement, and therefore, was estopped to deny coverage.

Having determined that the district court properly made findings of fact that are not clearly erroneous, we affirm on the reasoning of the district court.

AFFIRMED

7