THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Margaret R. Hiott, Appellant,
v.
Gerald W. Kelly and Elizabeth R. Kelly, Respondents.
 
 
 

Appeal From Georgetown County
Benjamin H. Culbertson, Circuit Court Judge

Unpublished Opinion No.  2005-UP-216
Heard February 8, 2005  Filed March 24, 2005

REVERSED AND REMANDED

 
 
 
Sherwood M. Cleveland, of Columbia, for Appellant.
Jack M. Scoville, Jr., of Georgetown, for Respondent.
 
 
 

PER CURIAM:  Margaret R. Hiott appeals from an order of the master-in-equity denying her claim for breach of a contract to sell real property, in which the master held Hiott failed to deliver marketable title.  We reverse and remand.
FACTS
On March 3, 1999, Hiott entered into a contract with Gerald and Elizabeth Kelly for the sale of her residence on Pawleys Island.  Closing was to take place on April 26, 1999.  The sale price was $728,000.  The contract did not expressly provide that time was of the essence.  The Kellys provided $25,000 in earnest money, which was held in an escrow account.
This dispute arose when a title search revealed a handwritten notation by the Georgetown County Clerk of Court in the grantor index indicating that a 1976 deed in Hiotts chain of title was of no legal effect.  The notation referenced case number 78-CP-22-356, a quiet title action concerning a dispute over ownership of certain property located at Magnolia Beach, a tract of land opposite Pawleys Island.  In that action, referred to as the Bultman action, title to the disputed property had been confirmed in plaintiffs W.F. Bultman and Anna Birnie McDonald against defendants Arthur L. Barber, Jr. and James A. Wilder and others.  
On April 20, 1999, counsel for the Kellys notified Hiotts closing attorney of the title issue.  The Kellys counsel opined that the notations in the index rendered the subject property unmarketable.  Hiotts closing attorney referred the matter to an attorney who had represented Hiott in the past.  On April 23, the new attorney wrote to the Kellys counsel reassuring them that title was marketable and that he was prepared to issue an owners title insurance on the property.  Closing did not occur as scheduled on April 26.  On April 27, Hiotts counsel wrote to the clerk of court requesting she review the Bultman file and remove the notation from the deed in Hiotts chain of title.  The next day, the Kellys counsel wrote back, raising a number of title concerns.  He noted the clerks office had made a decision to not remove the notation from the index.  The letter concluded by opining that title to the property was not marketable and the Kellys were unwilling to close.  He informed Hiotts counsel that he would be out of town from April 28 until May 3. 
That same day, Hiotts counsel responded, again taking the position that title to the property was marketable.  In the letter, he stated that he was considering the Kellys letter of that date as demonstrating an intent to rescind the contract.  He warned that if closing did not occur by May 3, he would advise Hiott to resell the property at the Kellys risk. However, he also suggested they explore some reasonable logical solution to this problem[.]
On May 5, the clerk of court told Hiotts counsel in a telephone conversation that the notations would be removed and followed up with a confirmation letter the next day.  Hiotts counsel immediately notified the Kellys counsel.  The Kellys, however, refused to close as they were no longer interested in the property.  At that time, the Kellys had not obligated themselves to purchase any other property.  Hiott subsequently sold the property for $675,000. 
Hiott then brought an action seeking damages for breach of contract.  The case was referred by consent order to the master-in-equity.  The master issued a decree finding that Hiott had failed to deliver marketable title, that the removal of the notations by the clerk of court was insufficient to make the title marketable, and that, in any case, the problem was not corrected within a reasonable time.  Hiott filed a timely motion to alter or amend.  After hearing the matter, the master issued an amended decree finding only that the notation on the grantor index made the title unmarketable and thus the Kellys did not breach the contract.  This appeal followed.
STANDARD OF REVIEW
An action seeking money damages for breach of a land sale contract is an action at law.  Sanders v. Coastal Capital Ventures, Inc., 296 S.C. 132, 134, 370 S.E.2d 903, 905 (Ct. App. 1988).  In an action at law tried by a master alone, our scope of review is limited to correction of errors of law, and we will affirm the masters factual findings unless there is no evidence reasonably supporting them.  Crary v. Djebelli, 329 S.C. 385, 388, 496 S.E.2d 21, 23 (1998).
LAW/ANALYSIS
The primary issue on appeal is whether the master correctly found that title to the property was unmarketable.  The question of whether a title is marketable is one of law for the court to determine.  77 Am. Jur. 2d Vendor and Purchaser § 137 (2004).  It is axiomatic that a purchaser cannot be required to take a doubtful title.  Sales Intl Ltd. v. Black River Farms, Inc., 270 S.C. 391, 398, 242 S.E.2d 432, 435 (1978).  However, [t]o be marketable, a title need not be flawless.  Gibbs v. G.K.H., Inc., 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct. App. 1993).  Instead, title is marketable if it is free from encumbrances and any reasonable doubt to its validity.  It is a title which a reasonable purchaser, well-informed as to the facts and their legal significance, is ready and willing to accept.  Id.  The mere, bare possibility, or remote probabilities, that there may be litigation with respect to the title is not sufficient to render it unmarketable.  There must be a reasonable probability of litigation.  Sales Intl, 270 S.C. at 398, 242 S.E.2d at 435 (quoting 57 A.L.R. 1253, 1307-08 (1928)).  
The Kellys challenge marketability by asserting that the facts of the Bultman case and the notations in the grantors index produced a sufficient cloud on Hiotts title to render it unmarketable.  
The Bultman action involved a title dispute over property known as Magnolia Beach.  W.F. Bultman, Anna Birnie McDonald, and Bultmans father purchased the disputed property at a partition sale.  The partition deed, dated May 4, 1960, described the subject property as follows:

ALL that tract or parcel of land situate in Township No. 7, County of Georgetown, State of South Carolina, known as Magnolia Beach, constituting a part of Midway Seashore Plantation, containing twenty (20) acres, more or less, bounded on the Northeast by lands of Dr. Henry Norris; Southeast by the Atlantic Ocean, Southwest by a creek separating said Magnolia Beach from Pawleys Island; Northwest by lands of Birnie, Bultman and others; and being more fully shown on a plat made by Lawson Oliver, C.E., dated October 30, 1934, as containing 28.8 acres of property, together with 12.5 acres subject to overflow.  

This description identifies property lying east of the inlet, between the inlet and the beach.  The complaint in Bultman quoted this description in identifying the property to which the plaintiffs sought to quiet title.  The supreme court also quoted this description in its opinion.  Bultman v. Barber, 277 S.C. 5, 8, 281 S.E.2d 791, 793 (1981).
James A. Wilder and Arthur L. Barber purchased three tracts of property from Donald McKenzie in 1976.  In their answer, Wilder and Barber asserted paramount title by referencing all three transactions.  Of these three deeds, only one of them involved the disputed area east of Midway inlet known as Magnolia Beach.  Wilder and Barber had subdivided their Magnolia Beach property and conveyed some of the lots to others who were made parties to the Bultman case.  The other two properties lay west of the inlet.  Those properties had already been conveyed to R.S. Cole and Bernice T. Cole, who were not made parties to the Bultman lawsuit, when the action was commenced.  Hiotts title derives from the Coles.  
After the trial court granted a directed verdict in favor of Bultman and the other plaintiffs, the supreme court affirmed, finding that the interests of Wilder and Barbers predecessors in title had been cut off by the partition sale.  Bultman, at 9-10, 281 S.E.2d at 794.  Upon remand, the trial court issued an order providing that the plaintiffs herein are the owner of all that portion of Magnolia Beach claimed by defendants herein; and the titles thereto held by defendants are of no legal effect and that the records in the office of the Clerk of Court of Georgetown County shall be adjusted to so indicate.  Counsel for the Bultman plaintiffs wrote the clerk of court requesting that the notation be made regarding a tract of land recorded in Deed Book 144 at page 136 and other deeds to the same land executed by defendants.  (Emphasis added).  Although this letter referenced only the property recorded in Deed Book 144 at page 136, the clerk of court noted that all three 1976 deeds transferring property from McKenzie to Wilder and Barber were of no legal effect in the grantor index.[1]
There is no question that the Bultman action did not involve Hiotts property and the notation on the grantor index was made in error.  The Kellys counsel admitted this fact at oral argument.  The complaint in Bultman referenced only property east of the inlet.  Moreover, the partition deed on which the entire litigation was based contained the same description.  Wilder and Barbers answer did mention the other deeds they received from McKenzie in 1976, but they did not include a counterclaim to put the validity of those deeds at issue.  The supreme courts opinion and the trial courts subsequent order only mention the Magnolia Beach property.  Finally, the letter from counsel for the Bultman plaintiffs to the clerk of court contained no reference to Hiotts property.  That letter requested adjustment of the record to reflect the invalidation of the deed recorded in Deed Book 144 at Page 136, the property east of the inlet. Although the letter also requested similar adjustments pertaining to other deeds to the same land executed by defendants, this language clearly refers to the subsequent purchasers of the Magnolia Beach property, who were made parties to the litigation.  Therefore, the notations entered concerning the other deeds executed by McKenzie, who was not a defendant, to Wilder and Barber were clearly erroneous.  
Furthermore, Hiotts chain of title could not have been affected by the Bultman action because at the time the litigation was commenced, Hiotts property had already been conveyed to the Coles, who were not made parties to that case.  
We find that a subsequent, erroneous notation in the index of a properly recorded and indexed deed, without more, is insufficient to render title unmarketable.  Where, as here, the purchasers could have determined the notations were erroneous by a careful reading of the property descriptions in the referenced case, and the pertinent facts and documents were called to their attention and discussed prior to the closing, the purchasers should not be able to rescind the contract merely by pointing to a technical defect not created by the seller.  Allowing rescission under such circumstances would place an undue hardship on sellers, who would be forced to bring quiet title actions to resolve minor defects.  
Furthermore, at the very latest, title to Hiotts title was marketable when the clerk of court corrected the notation in the index.  The Kellys assert that the removal of the notation by the clerk of court did not remove the cloud on Hiotts title because such removal was unauthorized as it was not done with court approval.  The clerk of court originally made the notations at the request of the plaintiffs attorney in Bultman.  The request for removal by Hiotts attorney Moran did not seek to countermand the order of the court in Bultman.  It merely pointed out that the notations did not comply with the courts order in that case.  After considering that matter, the clerk of court agreed and removed the notations.  It was merely the clerk of court correcting a prior mistake by the clerk of court. The clerk of court by statute is granted certain discretion in maintaining the record.  S.C. Code Ann. § 30-9-30 (Supp. 2004).  Thus, there was no need for further court action.  
The Kellys further argue that even if the removal of the notation cured the marketability problem, it was not done within a reasonable time.  The contract did not provide that time was of the essence.  It is well established in this state that time is not of the essence of a contract to convey land unless made so by its terms expressly or by implication.  Faulkner v. Millar, 319 S.C. 216, 219, 460 S.E.2d 378, 380 (1995).  When the contract does not include a provision that time is of the essence, the law implies that it is to be done within a reasonable time.  Id.  
Hiotts counsel clearly made every effort to alleviate the problem with the notation on the index within a reasonable time.  Hiott was not informed of the problem until April 20, six days before closing.  In the flurry of communications over the next several days, Hiott reassured the Kellys that title was marketable, obtained title insurance for the property, explained that the Bultman case had no bearing on the title, and offered to make all her counsels title notes available to counsel for the Kellys.  When the Kellys refused to close, Hiotts counsel wrote the clerk of court the next day, requesting that the erroneous notations be removed.  Although the clerk of court initially refused to remove the notation, Hiotts counsel persisted and the notations were removed on May 5.  Additionally, counsel for the Kellys was out of town for several days during this period.  
The Kellys assert that the letter from Hiotts counsel dated April 28 made time of the essence by implication.  This letter concluded as follows:

I take your letter of today as a clear and unequivocal interest to rescind the contract.  Mrs. Hiott stands ready, willing and able to close.  Given this, I hereby direct the realtors to withhold the [earnest] money.  I suspect that your clients do not consent to a release of this money to Mrs. Hiott.  If we do not close by 5:00 pm Monday, I will instruct Mrs. Hiott to resell the property at the [Kellys] risk.
If we agree, for the sake of argument, that your position is correct and title is not marketable, do you agree with me that the seller is contractually granted the right and obligation to cure the defect within a reasonable time?  Considering what we both know, do you disagree that a quiet title action will almost certainly be successful?  If the answer to both of the preceding questions is in the affirmative, is there any reason for us to explore some reasonable logical solution to this problem?  

Although Hiotts counsel postured in the letter that he would advise Hiott to resell the house if closing did not occur by a certain date, he also inquired about finding a reasonable solution to this problem[.]  It is apparent that with the letter Hiott was still negotiating to consummate the sale and did not intend to make time of the essence.  Thus, we find that as the correction to the notation was made within a reasonable time of the originally scheduled closing, the Kellys were not justified in refusing to close.  
CONCLUSION
We conclude the master erred as a matter of law in holding Hiott failed to deliver marketable title to her property.  Thus, the Kellys were in breach of their contract with Hiott when they refused to close.  We remand for a determination of damages.[2]  
 REVERSED and REMANDED. 
 GOOLSBY, HUFF and STILWELL, JJ., concur.  

[1] The deeds in Hiotts chain of title were recorded in Deed Book 142 at page 800 and Deed Book 143 at page 274.
[2] Hiotts complaint sought damages measured by the contract price minus the resale price, plus moving expenses and prejudgment interest.