1948

Jimmy I. GIBBS, Appellant v. G.K.H., INC., Respondent.

(427 S.E. (2d) 701)

Court of Appeals

*Wallace A. Mullinax, Jr.* and *Thomas F. Dugas*, of Greenville, *for appellant.*

*Roy McBee Smith*, Spartanburg, *for respondent.*

Heard Nov. 9, 1992.

Decided Feb. 16, 1993.

CURETON, Judge:

Jimmy I. Gibbs, the appellant, brought this action for rescission of a sales contract and to recover earnest money of $44,250.00 which he had deposited with G.K.H. Inc., the respondent, after Gibbs allegedly discovered defects in title to the commercial property on which Gibbs had successfully bid at auction. The case was tried before the circuit court without a jury. The trial judge found in favor of the seller, G.K.H., and awarded damages in the amount of the deposit, plus accrued interest. We affirm in part and reverse in part.

An action to rescind a contract is in equity. *Davis v. Cordell*, 237 S.C. 88, 100, 115, S.E. (2d) 649, 655 (1960).

The general rule is that for a breach of contract to warrant rescission, the breach must be so fundamental and substantial as to defeat the purpose of the contract. *Smith v. First Provident Corp.*, 245 S.C. 509, 512, 141 S.E. (2d) 646, 647 (1965); *Davis*, 237 S.C. at 99, 115 S.E. (2d) at 654; *Martin v. Carolina Water Service, Inc.*, 280 S.C. 235, 240, 312 S.E. (2d) 556, 560 (Ct. App. 1984). Rescission is an appropriate remedy for a purchaser whose seller has contracted but is unable to provide marketable title because of defects in the title. To be marketable, a title need not be flawless. Rather, a marketable title is one free from encumbrances and any reasonable doubt to its validity. It is a title which a reasonable purchaser, well-informed as to the facts and their legal significance, is ready and willing to accept. *New Freedom Corp. v. Brown*, 260 Md. 383, 272 A. (2d) 401 (1971).

The Roebuck Lumber Co. site in Roebuck, South Carolina was sold at liquidation auction on March 4, 1989 by its owner, G.K.H., to Gibbs for $295,000.00. The contract of sale provided

that the sale was "[s]ubject to all covenants or record [sic] (provided they do not make the title unmarketable). . . ." The contract further provided that the "[s]eller agrees to convey by *marketable title* and deliver a proper statutory warranty deed with dower duly renounced and free of encumbrances except as herein stated. . . ." (emphasis added). The contract also contained a liquidated damages clause which provided that the $44,250.00 deposit would be forfeited upon Gibbs' default. The parties scheduled to close on April 4, 1989.

On March 30, 1989, Gibbs sent a letter to G.K.H. in which he requested an additional thirty days to close in order to address concerns regarding a possible encroachment of a building on the property onto a railroad right-of-way owned by GSX Transportation along with other concerns.[1] These other concerns, which included a fence that encroached beyond the property line onto adjacent property as well as the presence of two underground storage tanks on the property, are not issues on appeal.

On April 4, 1989, G.K.H. agreed to extend the closing for thirty days. On April 5, 1989, Gibbs' attorney wrote to G.K.H., stating that Gibbs had elected to rescind the contract because the seller was unable to convey marketable title. On April 26, Gibbs' attorney wrote to G.K.H., suggesting that the parties would be able to close if G.K.H. would provide a quitclaim deed from the railroad for the encroachment of the building upon the right-of-way of if G.K.H. would provide a title opinion letter that did not take exception to the encroachment onto the railroad right-of-way, and if G.K.H. removed the storage tanks. G.K.H. removed the storage tanks at a cost of $4,500.00. Although G.K.H. provided a title opinion letter, gibbs claimed at trial, and asserts on appeal, that it was not satisfactory.[2]

On June 30, 1989, G.K.H. sold the Roebuck Lumber Co. site to another party, the Griffins, for $267,000.00, or for

[1] Gibbs was concerned that the corner of a 1500-square-foot building on the Roebuck site might encroach upon the right-of-way of a single-track railroad that was adjacent to the site. This building was valued at $25,000.00. Although there was no evidence as to the exact dimensions of the claimed encroachment, the trial judge estimated "that the area under the back corner of the building may be six to eight square feet."

[2] The title opinion letter took specific exception to the "encroachment of [a] building onto [the] right-of-way of [the] Seaboard Coastline Railroad."

$28,000.00 less than Gibbs' bid. G.K.H. refused to return the deposit in accordance with the terms of the liquidated damages clause in the sales contract. Gibbs argued at trial, and asserts on appeal, that the reduced price in the sale to the Griffins reflects a concession by G.K.H. in regards to the effect of the encroachment on the marketability of the title.

The trial judge found that there was insufficient evidence to establish that the building encroached on the railroad right-of-way and that the alleged encroachment did not make the title unmarketable because there was no reasonable probability of litigation on this issue. Additionally, he found that, regardless, G.K.H. had established title to the alleged encroachment on the railroad right-of-way through both adverse possession under S.C. Code Ann. § 15-67-201 *et seq* and § 15-5-340, and common-law presumption of grant. He also concluded that G.K.H. had made a reasonable effort to find another purchaser, and that the liquidated damages clause was not in the nature of a forfeiture because G.K.H.'s actual damages included $4,500.00 spent to remove the storage tanks and the $28,000.00 reduced price at the subsequent sale. The trial judge granted judgment in favor of G.K.H. in the amount of the $44,250.00 deposit plus interest.[3]

On appeal, Gibbs asserts that the trial judge erred by finding that the title was marketable despite the alleged encroachment of the building onto the railroad right-of-way, claiming that the only reasonable inference that could be drawn from the evidence is that building encroaches on the right-of-way and makes the title unmarketable. Gibbs also argues that the judge erred by finding that G.K.H. had acquired title to the property through adverse possession and presumption of grant, and this finding was inappropriate where this action was not one to quiet title and where CSX Transportation, the alleged title owner of the right-of-way and an interested party, was not before the court.

I.

The trial judge found that there was insufficient evidence to establish that the building encroached on the railroad right-of-way and that the alleged encroach-

---

[3] Additionally, G.K.H. had paid the broker's commission, resulting in a net recovery of $36,875.00.

ment did not make the title unmarketable because there was no reasonable probability of litigation on this issue. We agree.

A recorded deed from Moses Foster to the Greenwood, Laurens & Spartanburg Railroad Co., dated August 30, 1882, grants fee simple title to the land beneath and within 100 feet of each side of a railroad track not yet built. This deed refers to the right-of-way being given upon a parcel of land "hereinafter described" but omits a description.

The testimony of the Spartanburg Planning Director, and a map of Spartanburg County which he authenticated and which was compiled from maps of county roads in 1910, establishes the public road which lies between the Roebuck Lumber Co. site and the single railroad track was in existence in 1910.[4] Although the 1910 map does not depict a right-of-way, this road is within the 100-foot right-of-way alleged by Gibbs. This road closely parallels the railroad track; its presence suggests that at that time the railroad company had not acquired a right-of-way that extended onto the Roebuck Lumber Co. site because it would have been separated from this site by the public road.

The plat of a survey done for James A. Foster, G.K.H.'s predecessor in title, dated June 9, 1932, reveals a right-of-way line that runs parallel to the railroad track at a distance of 100 feet from the track, which was then owned by Charleston & Western Carolina Railway. The plat of a survey done for the Roebuck Gin & Lumber Co., G.K.H.'s predecessor in title, dated March 13, 1951, reveals the same line paralleling the railroad track owned by Charleston & Western Carolina Railway. The plat of a survey done in 1960 does not reveal a line that would suggest an encroachment, although it is argued that the building appears to be within 100 feet of the railroad track. The plat of a survey done in 1970 reveals a line that would suggest an encroachment by the building upon the railroad right-of-way. None of the plats state that they depict a railroad right-of-way.

In 1977, Roebuck Lumber Co. concluded a "spur track agreement" with the Seaboard Coastline Railroad Co., CSX's predecessor, for the purpose of establishing a right-of-way for

---

[4] He also described a 1916 map which did not depict either the road or the railroad track.

a spur track. Although the plat which was incorporated into this agreement and recorded was intended to depict the location of the spur track, this spur track was adjacent to the area where Gibbs claims there is an encroachment, suggesting that the railroad visited the disputed area in 1977 and found no encroachment upon its right-of-way.

The only documentary evidence of the railroad right-of-way and the encroachment of the building upon it is reflected by those plats described above which depict a right-of-way line. These plats were all prepared by the surveying firm, Gooch & Associates, or by its predecessors. Mr. Gooch testified that there was no documentary or record evidence in his firm's files that form the basis for depicting the right-of-way lines on the plats. He also testified that most railroad right-of-ways are not recorded, that these right-of-ways might be as little as four or five feet in width, and that when a plat is prepared, the surveyor will generally rely upon the file compiled by his firm for a previous survey without checking courthouse records or contacting the railroad to ascertain whether a right-of-way exists and in what width. He testified that when his firm depicts a railroad right-of-way on a plat it is often a "surmise."

The age of the building and the railroad track is uncertain and no evidence suggests that the building was constructed subsequent to the railroad or vice versa.

The evidence does not establish a connection between the area involved in this litigation and the deed given by Moses Foster in 1882 or between his grantee and the present owner of the railroad track, CSX Transportation, although the testimony of CSX's engineer might have suggested a connection.

The evidence suggests that at one time there had been a second railroad track parallel to the one involved in this litigation. The evidence does not suggest when this second track was removed.

Gibbs called a CSX project engineer to testify as to CSX's policy regarding encroachments on its right-of-ways. The engineer stated that he did not know whether there was an encroachment, that the normal operating limit of the railroad was 50 feet from the center of the track, that normally the railroad would attempt to sell or lease any land lying outside this operating limit, that normally the decision to litigate was left to CSX's legal department, that he didn't know whether

this matter had been turned over to CSX's legal department, and that he was uncertain as what the position of the legal department would be in regards to the alleged encroachment. He did not know when the tracks were constructed or if a second track had been removed.

Gibbs also called a witness who testified that normally his title insurance company would not issue a policy without taking a specific exception to a building encroachment. On cross-examination, the witness admitted that his company had previously issued a title policy on the Roebuck Lumber Co. site without taking exception to the encroachment. Several other title policies had been issued on the property without taking specific exception.

Gibbs also asserts that the lower price realized by G.K.H. upon resale of the property to the Griffins is an implied acknowledgment by G.K.H. that this encroachment made the title unmarketable.[5] The trial judge observed that the deed given to the subsequent purchaser contained no reservation and found that there was no evidence that the price had been reduced because of the alleged encroachment.

Gibbs asserts that this lawsuit and the need for a judicial determination establish that there was a reasonable probability of litigation regarding the title to the property.

The trial judge concluded that there was no reasonable probability of litigation on the issues raised by Gibbs, relying upon *Sales International Ltd. v. Black River Farms, Inc.*, 270 S.C. 391, 242 S.E. (2d) 432 (1978). In *Sales*, the purchaser of land sought to recover his deposit, claiming that the title was unmarketable because there was a latent ambiguity in the chain-of-title in 1935 as to which tract a previous grantor intended to convey and because the habendum clause of a 1931 deed in the chain-of-title included the clause "for the sole use and benefit of a school to be operated at Gable, South Carolina." The Supreme Court affirmed the admission of parol evidence to resolve the ambiguity created by the 1935 deed and agreed with the trial judge that the title was not rendered unmarketable by the language of the habendum of the 1931

---

[5] A specific provision in the contract of sale made this resale subject to the alleged encroachment of the building upon the railroad right-of-way. Also, there was an exception to the encroachment in the title insurance policy supplied by G.K.H. at resale.

deed. The Supreme Court observed that although "a purchaser cannot be required to take a doubtful title . . . the mere, bare possibility, or remote probabilities that there may be litigation with respect to the title is not sufficient to render it unmarketable. There must be a reasonable probability of litigation." (Citations omitted.) It concluded that the seller had record title. It observed that the title was marketable because the purchaser had produced no evidence to support the contention of a claim to the property by any third party. The Supreme Court also observed that because 32 years had passed since the disputed conveyance and that during this time, the seller and his predecessors in title had been undisturbed in their possession, that the seller had acquired title through adverse possession and presumption of grant.

We believe that the trial judge was correct in holding *Sales* dispositive on the question of reasonable probability of litigation. The evidence establishes that any claim which would have affected G.K.H.'s fee-simple title to the disputed property beneath the corner of the building was uncertain and tenuous at best. Also, G.K.H. and its predecessors in title have been in undisturbed possession of the property since 1932. If the building encroaches on the right-of-way, it did so for 57 years prior to this action without litigation.[6] We agree with the trial judge that Gibbs failed to establish that CSX, a third party, had a claim to the property or that it would assert a claim, or that there was a reasonable probability of litigation that would render the title unmarketable.

On appeal of an equitable action tried by a circuit judge alone without a reference, this court may find facts in accordance with its own view of the preponderance of the evidence. *Townes Associates, Ltd. v. City Greenville*, 266 S.C. 81, 86, 221 S.E. (2d) 773, 775 (1976); *Southern Realty and Construction Co. v. Bryan*, 290 S.C. 302, 304, 350 S.E. (2d) 195 (Ct. App. 1986). This broad scope of review does not require this court to disregard the findings of the trial judge nor does

---

[6] Although in *Sales,* the effect of the seller's undisturbed possession for 32 years was dispositive in the Supreme Court's conclusion that the seller had acquired title through adverse possession and presumption of grant, undisturbed possession also tends to prove that there is no reasonable probability of litigation.

it relieve Gibbs of the burden of convincing this court that the trial judge erred. The trial judge, who saw and heard the witnesses, is better able to evaluate their credibility. *Calcutt v. Calcutt,* 282 S.C. 565, 569, 320 S.E. (2d) 55, 57 (Ct. App. 1984); *Albert v. Blackwell,* 280 S.C. 128, 129, 311 S.E. (2d) 101, 102 (Ct. App. 1984). We have reviewed all facts in the record and find they support the trial judge's findings.

## II.

Although the trial judge found that the lack of evidence of encroachment of the building onto the railroad right-of-way was dispositive in establishing that there was no probability of litigation, he also found that, regardless, because G.K.H. and its predecessors in title were in open and notorious possession of the property from 1932 until the time of suit, a period in excess of forty years, they had acquired title through adverse possession under S.C. Code Ann. § 15-67-210 *et seq* and § 15-3-340, and under common-law presumption of grant, so that no reasonable probability of litigation existed. Gibbs asserts that the trial judge erred because this action was not one to quiet title where CSX Transportation, the alleged title owner of the right-of-way and an interested party, was not before the court. Although we do not consider whether the trial judge properly examined the facts and the law in arriving at his conclusions regarding adverse possession and presumption of grant, we agree with Gibbs' assertion that it was inappropriate to find that G.K.H. had acquired title under either of these doctrines without CSX Transportation being joined in the action. Rule 19, SCRCP. Accordingly, we reverse the trial judge's findings that G.K.H. had acquired title through adverse possession and presumption of grant.

Our review of Gibbs' other arguments for reversal establishes that they are without merit. We dismiss them in accordance with S.C. Code Ann. § 14-8-250 (1976) as amended, and Rule 220 (b) (2), SCACR.

Affirmed in part and reversed in part.

SHAW AND BELL, JJ., concur.