578 S.E.2d 329

Walker Scott RUSSELL, Respondent/Appellant,

v.

WACHOVIA BANK, N.A. as Putative Trustee of the Alleged Donald Stuart Russell Revocable Trust and as Putative Trustee of the Alleged Donald Stuart Russell Irrevocable Trust; Virginia U. Russell; Donald S. Russell, Jr.; Mildred Russell Williams Neiman; John R. Russell; Thaddeus Russell Williams; Virginia Carol Williams; and Cecilia Frances Williams, Respondents.

and

Mildred R. Neiman, Appellant/Respondent,

v.

Wachovia Bank, N.A. as Personal Representative of the Estate of Donald S. Russell, Sr., Virginia C. Williams, T. Russell Williams, Cecilia F. Williams, Virginia U. Russell, Donald S. Russell, Jr., W. Scott Russell, and John R. Russell, Respondents.

and

Mildred R. Neiman, Appellant/Respondent,

v.

Wachovia Bank, N.A., as Personal Representative of the Estate of Donald S. Russell Williams, Sr., Virginia C. Williams, T. Russell Williams, Cecilia F. Williams, Virginia U. Russell, Donald S. Russell, Jr., W. Scott Russell, and John R. Russell, Respondents.

and

In The Matter of the Estate of Donald S. Russell, Deceased Walker Scott Russell, Respondent/Appellant,

v.

Virginia U. Russell, Donald S. Russell, Jr., Mildred Russell Williams Neiman, John R. Russell, and Wachovia Bank, N.A. as Personal Representative, Respondents,

and

Wachovia Bank, N.A., as Personal Representative of the Estate of Donald S. Russell, deceased, Respondent,

v.

Virginia Williams, Russell Williams, Cecilia Williams, Walker Scott Russell, Jr., and Grace Johnson Russell, Respondents,

Of whom Walker Scott Russell, a/k/a W. Scott
Russell is Respondent/Appellant,

and

Mildred Russell Williams Neiman, a/k/a Mildred
R. Neiman is Appellant/Respondent,

and

Wachovia Bank, N.A., as Personal Representative of the Estate of
Donald S. Russell, deceased, Virginia U. Russell, Donald S.
Russell, Jr., John R. Russell, Thaddeus Russell Williams, a/k/a
T. Russell Williams, a/k/a Russell Williams, Virginia Carol
Williams, a/k/a Virginia C. Williams, a/k/a Virginia Williams,
and Cecilia Frances Williams, a/k/a Cecilia F. Williams are
Respondents.

### No. 25599.

Supreme Court of South Carolina.

Heard Nov. 20, 2002.

Decided Feb. 24, 2003.

Rehearing Denied March 26, 2003.

212

Joseph M. McCulloch, Jr., of Columbia, for Appellant/Respondent.

J. Neil Robinson, of Charlotte, and Leo A. Dryer, Jr., of Columbia, for Respondent/Appellant.

G. Dewey Oxner, Jr. and Moffatt G. McDonald, of Greenville; R. Ray Dennis, of Spartanburg; Stanley T. Case and Edward G. Smith, of Spartanburg; and Thomas E. McCutchen and Hoover C. Blanton, of Columbia, for Respondents.

Justice PLEICONES:

Walker Scott Russell ("Scott") and Mildred Neiman ("Mim"), collectively "Appellants", each filed Summons and Complaints in the Spartanburg County Probate Court seeking to set aside the Last Will and Testament of their father, Donald S. Russell, Sr. ("Testator"), and seeking to set aside the Revocable Trust and Irrevocable Trust of Testator. Appellants contend both the will and the trust instruments resulted from undue influence exerted on Testator. Wachovia Bank ("Wachovia"), Executor of Testator's estate and trustee of both trusts, as well as the other Defendants, moved for summary judgment, which was granted. These appeals followed.[1] We affirm as modified.

## FACTS

Testator was married to Virginia U. Russell ("Mrs.Russell") and they had four children, Donald Russell, Jr. ("Donnie"), Mim, John Russell ("Johnny") and Scott. Mim married Thad Williams ("Thad") and had three children, Russell Williams ("Russell"), Virginia Williams ("Virginia") and Cecilia Williams

---

1. Appellants' actions were consolidated for purposes of discovery and trial, and have remained consolidated on appeal.

("Cecilia"), collectively "The Williams Children." Mim and Thad divorced, and Mim married Leonard Neiman in June of 1997.

Testator served as an active United States Circuit Judge for the Fourth Circuit until his death on February 22, 1998, at the age of 92. Prior to his appointment to the federal bench, Testator served as a governor of and United States senator from South Carolina, as well as President of the University of South Carolina. Testator's physical condition deteriorated in his later years, and he was occasionally hospitalized.

The Williams Children lived with Testator and his wife for most of their lives. Cecilia lived in the home until Testator's death, while Russell and Virginia resided in the home intermittently.

Testator executed many wills, codicils, and trusts beginning in 1959. His final will and trusts were executed on February 27, 1996, with codicils executed on May 15, 1996, November 6, 1996, October 9, 1997, and November 6, 1997. The last codicil was executed on February 20, 1998, just two days before his death. Testator's estate totaled 33 million dollars.

Testator's final estate plan provided that his estate be held in trust for Mrs. Russell for her lifetime, and at her death the trust property be distributed as follows:

(1) $750,000 to Scott in trust for life, if he is not living then to Scott's spouse and descendants then living, also in trust.

(2) One-third of the balance to Donnie.

(3) One-third of the balance to Johnny.

(4) The remaining one-third of the balance to Mim and her three children, the Williams Children, as follows:

a. One-fourth to Mim in trust for life, and then to the Williams Children in trust for life.

b. One-fourth to Virginia in trust for life.

c. One-fourth to Cecilia in trust for life.

d. One fourth to Russell in trust for life.

Mim is to receive only the income from her trust, but the trustee has the discretion to distribute principal. At Mim's death, the property remaining in the trust shall be divided per

stirpes into trusts for Mim's descendants living at the time of her death. The Williams Children receive distributions of principal and income at the sole discretion of the trustee. The Williams Children are to have a power of appointment over their trusts through their wills, and cannot appoint the trust property to their estates or to creditors. If the Williams Children do not exercise their powers of appointment, their shares are divided per stirpes into trusts for their descendants living at the time of their death.

Appellants contend that the trial court erred in granting summary judgment against them. Since our standard of review requires we review the evidence in the light most favorable to Appellants, *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002), we recount from the record the evidence supporting their claims of undue influence by the Williams Children and their father Thad.

Appellants presented evidence, that at times, Testator was confused. One incident in 1997, detailed by several nurses employed by Testator, involved Testator thinking that he was in Richmond, Virginia, when in fact he was in Spartanburg, South Carolina. The nurses also stated that Testator "doubled up" on his medication, which caused them to regulate the medication Testator took, and put a lock on the medicine cabinet.

There was evidence that the Williams Children were disrespectful to Testator, and frequently yelled at Testator about money. The Williams Children engaged in physical fights in front of Testator. There was evidence that Cecilia monitored Testator's telephone calls while he was in his home, and sometimes told Testator which clothes to wear. Cecilia would not allow Testator to regulate the thermostat in his house.

The Williams Children spent large amounts of Testator's money, sometimes charging as much as $12,000 in a month. The Williams Children had unfettered access to Testator's office, and lived in his house. There was evidence that Thad [2] had frequent contact with Testator's attorney regarding the estate plans. Two medical doctors testified that Testator could have been susceptible to undue influence. Finally, there

---

2. After receiving his law degree, Thad Williams earned a Master of Law in Taxation from New York University.

was evidence that Russell and Cecilia removed records from Testator's office on the weekend of his death.[3]

There is, however, undisputed evidence that the Testator was mentally competent and worked until the day he died. Testator drove himself to work every day. At the direction of Testator, his secretary, not the Williams Children or Thad, handled Testator's financial transactions. Testator frequently attended social engagements with Donnie and Johnny, as well as other friends and colleagues. There is also undisputed evidence that Mim has not provided for her own children, the Williams Children, in her estate plan. Finally, Testator met with his attorney alone on most occasions, and neither the Williams Children, nor Thad were present at the signing of the will, trust documents or codicils.

## ISSUES

Did the trial judge err in granting summary judgment because a genuine issue of material fact existed concerning the exercise of undue influence over the Testator in the execution of his will?

Did the trial judge err in failing to make a specific ruling that North Carolina law governed the validity *vel non* of the trust documents?

Did the trial judge err in granting summary judgment because a genuine issue of material fact existed concerning the validity of Testator's trusts due to undue influence or lack of trust *res* ?

## DISCUSSION

I. Will Contest

Appellants argue that Testator's entire estate plan is *void ab initio* due to undue influence exerted by the Williams Children as well as by Thad Williams, their father, and that summary judgment was inappropriate as there was a genuine issue of material fact. We disagree.

---

3. Although Appellants tout this as a major indication of undue influence, the records were immediately sent to Wachovia, and the Testator authorized the removal of the records.

■ All parties stipulate that South Carolina law governs the will contest. For a will to be invalidated for undue influence, the influence must be the kind of mental coercion which destroys the free agency of the creator and constrains him to do things which are against his free will, and that he would not have done if he had been left to his own judgment and volition. *Last Will and Testament of Smoak v. Smoak,* 286 S.C. 419, 334 S.E.2d 806 (1985). Undue influence must be shown by unmistakable and convincing evidence, which is usually circumstantial. *Id.* The evidence must show that the free will of the testator was taken over by someone acting on testator's behalf. *Id.* Undue influence is demonstrated where the will of the influencer is substituted for the will of the maker. *Id.*

■ Generally, in cases where a will has been set aside for undue influence, there has been evidence either of threats, force, and/or restricted visitation, or of an existing fiduciary relationship. *Hembree v. Estate of Hembree,* 311 S.C. 192, 428 S.E.2d 3 (Ct.App.1993). The "mere existence of influence is not enough to vitiate a Will … A mere showing of opportunity and even a showing of motive to exercise undue influence does not justify a submission of that issue to a jury, unless there is additional evidence that such influence was actually utilized." *Last Will and Testament of Smoak, supra,* at 424, 334 S.E.2d at 809. Where the testator has an unhampered opportunity to revoke a will or codicil subsequent to the operation of undue influence upon him, but does not change it, the court as a general rule considers the effect of undue influence destroyed. *Smith v. Whetstone,* 209 S.C. 78, 39 S.E.2d 127 (1946), as quoted in *Estate of Cumbee,* 333 S.C. 664, 511 S.E.2d 390 (Ct.App.1999).

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. When reviewing a summary judgment order, an appellate court applies the same standard as the trial court. *Fleming v. Rose,* 350 S.C. 488, 567 S.E.2d 857 (2002). "The evidence, and all reasonable inferences must be viewed in the

light most favorable to the non-moving party." *Id.* at 494, 567 S.E.2d at 860. Since the standard of proof in an undue influence case is unmistakable and convincing evidence, there must be more than a scintilla of evidence in order to defeat a motion for summary judgment. *Id.* A heightened standard for summary judgment is required where "the inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits." *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001) quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 Taking the facts in the light most favorable to the Appellants, we agree with the trial judge that there is no genuine issue of material fact to preclude the grant of summary judgment as to the validity of the will. Appellants have not presented unmistakable and convincing evidence that the Williams Children or Thad utilized their relationship with Testator to substitute their will for his. The evidence presented points to the conclusion that the Williams Children were churlish, spoiled children, who took advantage of Testator's generosity. While unattractive, such conduct and demeanor does not amount to undue influence.

 In previous cases, this Court has found no undue influence existed where the evidence was similar in degree to that presented by Appellants. *See, e.g., Calhoun v. Calhoun,* 277 S.C. 527, 290 S.E.2d 415 (1982) (Testator was confined to a nursing home, in feeble physical condition, yet continued to conduct business affairs three years after the signing of the will. Beneficiary drove testator to the attorney's office, but was not present at the signing of the will. Case should not have gone to the jury because no undue influence.); *Last Will and Testament of Smoak, supra,* (Testator was bedridden, and beneficiary's attorney drafted the will. Directed verdict should have been granted because no evidence of undue influence.); [4] *First Citizens Bank v. Inman,* 296 S.C. 8, 370 S.E.2d 99 (1988) (Testator was in reasonably good health, worked in her yard,

---

4. The standard for summary judgment "mirrors the standard for a directed verdict under Rule 50(a)." *Baughman v. American Telephone & Telegraph Co.,* 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991).

spoke with her neighbors and did some cooking. Testator "exhibited a pattern of changing her will over the years ... she went through a consistent procedure of talking with her lawyer ... it appears she was the ultimate decision maker." Directed verdict was proper.)

Where undue influence has been found, the facts have been far more egregious than those in this situation. *See, Estate of Cumbee, supra* (Testator's conversations were monitored by beneficiaries through a baby monitor, and testator developed hand signals to communicate with her visitors. The beneficiary controlled the testator's finances, and gave the directions for the new will to the attorney, picked up the will, and had the will executed in the home of the beneficiary.); *Byrd v. Byrd,* 279 S.C. 425, 308 S.E.2d 788 (1983) (Testator was infirm, both physically and mentally, prior to and contemporaneously with the execution of the will. The beneficiary threatened to send the testator to a nursing home, and visitation was severely restricted by the beneficiary. The will was voided for undue influence.)

Here, it is undisputed that Testator was independent, and physically mobile until a few days before his death. Testator, while elderly, was not infirm, mentally or physically, and was not prevented from seeing relatives, friends or business associates.

In order for the will to be void due to undue influence, "[a] contestant must show that the influence was brought directly to bear upon the testamentary act." *Mock v. Dowling,* 266 S.C. 274, 277, 222 S.E.2d 773, 774 (1976). The record is devoid of any evidence that the Williams Children or Thad influenced the execution or any modification of the will. Neither the Williams Children nor Thad were present when the contents were discussed, or when the will was executed. The circumstances surrounding the will indicate the will was the product of the free and unfettered act of Testator.

Appellants argue that two expert witnesses, both medical doctors, testified that Testator was subject to undue influence, and that this testimony is enough to withstand summary judgment. We disagree. Neither of the experts examined the Testator. Both experts testified that Testator was competent to execute a will. Absent examination of Testator by the

expert, or an opinion that Testator was mentally incompetent and therefore more susceptible to undue influence, we fail to see how expert medical testimony can be probative as to undue influence. Further, neither expert based his opinion on the circumstances surrounding the execution of the Will, which is the critical issue when evaluating an undue influence case. "Had his expert testimony related to mental capacity it might have properly been considered on that issue." *Smoak v. Smoak,* 286 S.C. 419, 427, 334 S.E.2d 806, 810 (1985). The doctors' testimony here did not, and therefore does not preclude summary judgment.

Testator had numerous opportunities to change the will after executing it in 1996. In fact, Testator did amend his estate plan multiple times. The undisputed evidence to the effect that Testator drove his own car, worked, and met alone with his attorney [5] while executing the will, is evidence of the "unhampered opportunity" to change his will, which negates any undue influence evidence that the Appellants put forth. *Smith v. Whetstone, supra.*

When opposing a summary judgment motion, the nonmoving party must do more than "simply show that there is a metaphysical doubt as to the material facts but must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Baughman v. American Telephone & Telegraph Co.,* 306 S.C. 101, 107, 410 S.E.2d 537, 545 (1991). Where a verdict is not *"reasonably possible"* under the facts presented, summary judgment is proper." *Bloom v. Ravoira,* 339 S.C. 417, 529 S.E.2d 710 (2000) (emphasis added). In this case, the trial judge properly granted summary judgment on the undue influence claim relating to the will. A judgment for Appellants was not reasonably possible under the facts presented when measured against the level of unmistakable and convincing proof.

II. North Carolina Law

 Appellants argue that North Carolina law applies to the trust documents. We agree. The trust documents specifically provide for the application of North Carolina law.

---

**5.** We note that Testator's counsel served as President of the American College of Trust and Estate Counsel.

Both trusts state, "[t]he situs of this trust shall be the State of North Carolina, and the administration and construction of the trust, and the rights of the beneficiaries hereof, shall be governed by the laws of the State of North Carolina." As to interests in personal property held in testamentary or living trusts, a testator may designate the local law to govern the validity of the trust unless application of the designated law would be contrary to public policy of the state of testator's domicile at death. *Restatement (Second) of Conflict of Laws* §§ 268–270 (1971). *See also* George Gleason Bogert, *Trusts and Trustees*, § 301, § 332 (2d ed., West 1979). *Cf.* S.C.Code Ann. § 62–7–202 (1987) (suggests the settlor can designate in the trust instrument the principal place of administration of the trust). Further, the designated state must have a substantial relation to the trust. *Restatement (Second) of Conflict of Laws* §§ 268–270. "A state has a substantial relation to the trust when it is the state, if any, which the settlor designated as that in which the trust is to be administered, or that of the place of business or domicil of the trustee at the time of the creation of the trust, or that of the location of the trust assets at that time, or that of the domicil of the settlor, at that time, or that of the domicil of beneficiaries. There may be other contacts which will likewise suffice." *Restatement (Second) of Conflict of Laws* § 270 cmt. b.

 In this case, the Testator [6] designated that North Carolina law should apply, and the trustee as well as the trust property are located in North Carolina. There is a substantial relationship between the trust and North Carolina. We hold that a settlor may designate the law governing his trust, and absent a strong public policy reason, or lack of substantial relation to the trust, the choice of law provision will be honored. North Carolina law applies to Testator's trusts.

III. Trust Contest

A. Undue Influence

 Appellants argue that the trusts are invalid due to undue influence by the Williams Children and/or Thad. Under

6. Donald S. Russell, Sr. continues to be referenced as "Testator" for consistency, notwithstanding that we discuss the validity of trust instruments.

North Carolina law, which is similar to South Carolina law, undue influence requires that:

> there must be something operating upon the mind of the person whose act is called in judgment, of sufficient controlling effect to destroy the free agency and to render the instrument, brought into question, not properly an expression of the wishes of the maker, but rather the expression of the will of another. It is the substitution of the mind of the person exercising the influence for the mind of the testator, causing him to make a will which he otherwise would not have made.

*In re Will of Andrews*, 299 N.C. 52, 261 S.E.2d 198, 199 (1980). Undue influence must be proved by the greater weight of the evidence. *Id.* The Appellants must "carry their burden of presenting specific evidence that [Testator's] will was the result of 'overpowering' and 'fraudulent influence' exerted by [the Williams Children and/or Thad] which overcame [Testator's] will." *Estate of Whitaker*, 144 N.C.App. 295, 547 S.E.2d 853, 858 (2001).

There are several factors that the North Carolina courts look to in determining whether undue influence was exerted over the testator. *In re Will of Andrews, supra.* "The test for determining the sufficiency of the evidence of undue influence is usually stated as follows: (i)t is generally proved by a number of facts, each one of which, standing alone, may have little weight, but taken collectively may satisfy a rational mind of its existence." *Id.* at 200. Analyzing the North Carolina factors one-by-one it is apparent that summary judgment was proper:

(1) **Old age and physical and mental weakness.** Appellants presented evidence that Testator was an elderly man who occasionally showed signs of physical and mental weakness.

(2) **The person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.** Appellants contend the Williams Children lived in the home of Testator. However, evidence that a beneficiary lived with the Testator must be coupled with evidence of constant association and supervision. Appellants presented no evidence that Testator

was subject to the Williams Children's constant supervision or association and admit that Testator was free to leave the house, drove himself to work everyday, and freely associated with other friends, family members, and colleagues.

(3) **Others have little or no opportunity to see him.** There is no evidence to support this factor.

(4) **The will is different from and revokes a prior will.** Appellants presented evidence that the Williams Children were not included in any of the estate plans previous to the 1996 plan and contended Testator intended to treat his children equally. However, Testator had never treated his children equally in previous estate plans. Beginning in 1981, Scott received a specific bequest, which increased substantially in all of the subsequent revisions, including the one executed two days before Testator's death, which increased Scott's trust share from $500,000 to $750,000. Although the Williams Children were not included in the previous wills, there was evidence that Mim had disinherited the Williams Children, and that Testator changed his estate plan to make sure they were provided for. Also, there was evidence that Testator did not approve of Mim's marriage to Neiman, and wanted to insure Mim's bequest passed to her children, and not to Neiman.

(5) **It is made in favor of one with whom there are no ties of blood.** This element is not applicable, as the Williams Children are the grandchildren of the Testator.

(6) **It disinherits the natural objects of his bounty.** This element is also not applicable.

(7) **The beneficiary has procured its execution.** Appellants presented evidence that Thad arranged for the execution of the documents, and was heavily involved in the entire process. However, the Appellants presented no evidence that Thad, or the Williams Children, were present at the execution of any of the documents, nor that they *procured* the execution. Also, Thad is not a beneficiary of the estate plan.

 Analyzing North Carolina jurisprudence, and applying these factors in the light most favorable to the Appellants, there is no evidence to make out a *prima facie* case of undue influence under North Carolina law.[7] Appellants presented evidence of the first factor, "[b]ut evidence of mental or physical condition standing alone is not evidence of undue influence." *In re Ball's Will,* 225 N.C. 91, 33 S.E.2d 619, 621 (N.C.1945). The only other evidence Appellants presented was that the will was different from prior wills. There is no specific evidence of an "overpowering" or "fraudulent influence" exerted over Testator, therefore the summary judgment motion was proper and we affirm the trial court's ruling. *Estate of Whitaker, supra.*

### B. Trust *Res*

 Scott argues that the trust was not funded at its creation, and therefore was not validly created. We disagree. There is sufficient evidence that the trusts were funded. Testator expressed an intent to create a trust, designated beneficiaries and a trustee, and funded the trust. "In order to

---

7. Following is an example of a case, with facts far more favorable to a contestant than the one at hand, in which it was held that a *prima facie* case was not presented. In *Matter of Will of Prince,* 109 N.C.App. 58, 425 S.E.2d 711, 714 (1993), the North Carolina Court of Appeals held that the evidence presented was insufficient to warrant submission of the issue of undue influence to a jury.

The caveator presented evidence that the testatrix was old and at times suffered with memory loss; that the propounder, the testatrix's brother, assisted testatrix with her affairs; that the propounder's former daughter-in-law made an appointment for the testatrix with the attorney; and that the propounder drove the testatrix to see her attorney and sat in the conference she had with her attorney. The caveator also presented evidence that the testatrix did not make provisions in her will for her son and her two grandchildren; that on occasions the testatrix expressed to others that she was afraid of the propounder; and that the propounder was a beneficiary under the will. In holding that such evidence was insufficient to support an inference of undue influence, [the court] stated that the evidence "fails 'to support an inference that the will was the result of an overpowering influence exerted by propounder of testatrix which overcame testatrix's free will and substituted for it the wishes of propounder, so that testatrix executed a will that she otherwise would not have executed.' "

*In the Matter of Estate of Whitaker,* 144 N.C.App. 295, 547 S.E.2d 853, 858 (2001).

create an enforceable trust it is necessary that the donor or creator should part with his interest in the property to the trustee by an actual conveyance or transfer, and, where the creator has legal title, that such title should pass to the trustee." *Tyson v. Henry*, 133 N.C.App. 415, 514 S.E.2d 564, 565 (1999). Under the *Restatement (Second) of Trusts*, "[i]f the owner of property executes an instrument purporting to transfer to another in trust such property as he may designate thereafter, the conveyance is incomplete and no trust arises *unless and until he designates and transfers the property.*" § 26 cmt. e (1959) (emphasis added). There is evidence that a ten dollar bill was attached to the trust documents when Testator executed the documents. "The trust agreement obviously may precede the transfer of title, as well as occur at the time of the transfer." George Gleason Bogert, *Trusts and Trustees*, § 141, 10 (2d ed., West 1979).

Even if Testator did not fund the trust at the moment the documents were signed, the trusts were funded as of March 21, 1997, one year prior to Testator's death, as evidenced by a partnership agreement. *See, e.g. Burbridge v. First Nat. Bank and Trust Co. of Oklahoma City*, 415 P.2d 591 (Ok.1965) (No property or assets were listed in the trust agreement or attached thereto as exhibits. The trust did not become operative as to any of the settlor's assets when the trust agreement was drawn up, but only later when property was specifically transferred and delivered to the trustee by the settlor.) We therefore conclude that all of the required elements for the formation of a trust were met.

## CONCLUSION

We affirm the order of the circuit court judge granting summary judgment on the will under South Carolina law.

We hold that North Carolina law applies to the issues surrounding the trust documents. Under North Carolina law, Appellants presented no evidence that would give rise to a genuine issue of material fact as to their undue influence claim and Respondents are entitled to summary judgment as a matter of law. Finally, we hold that the trust was validly funded.

TOAL, C.J., WALLER, J., and Acting Justices JOHN W. KITTREDGE and PERRY M. BUCKNER, concur.