608 S.E.2d 849

**Mabel DIXON, Appellant,**

v.

**Stevan Fay DIXON, Respondent.**

**No. 25925.**

Supreme Court of South Carolina.

Heard June 23, 2004.

Decided Jan. 18, 2005.

390

Steven C. Kirven, of McNair Law Firm, P.A., of Anderson, for Appellant.

Louisa Rice Lund, of Rice and Lund, of Anderson, for Respondent.

Chief Justice TOAL:

This Court certified this case pursuant to Rule 204(b), SCACR, to review the master-in-equity's decision declaring Stevan Fay Dixon (Son) the titleholder of his mother's home in fee simple absolute. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

Appellant Mabel Dixon (Mother) is eighty-four-years old and has lived alone in her home in Anderson, South Carolina for the past forty-seven years. She has two children: Stevan (Son), who resides in Anderson, and Nicki, who, at the time of trial, resided in Ohio. Other than a hearing problem,[1] Mother has no health problems.

---

1. Mother had a "mastoid operation." She testified that she could only hear out of one ear.

In October 1998, Mother conveyed her property to Son for a stated consideration of "Five ($5.00) Dollars and other love and consideration." At the same time the deed was executed, Mother and Son also signed an agreement (Lifetime Agreement), prepared by Son, whereby he agreed to care for Mother and maintain her residence.[2] The Lifetime Agreement also provided that if the property were ever sold, the proceeds from the sale would be divided equally between Son and his half-sister, Nicki.

Mother testified that she has not always had a good relationship with Son. Nevertheless, Mother testified that because she felt he "had a change of personality," she decided to give him a limited power of attorney prior to the execution of the deed, in case she had to be hospitalized. Mother and Son also opened a joint checking account with a balance in excess of $14,000 to be used in the event Mother was incapable of paying her bills. Son testified that he never withdrew funds from the account.

At some point, however, Mother decided that "the situation was not working out" and revoked Son's limited power of attorney.[3] Apparently Mother believed Son was not helping her as he promised. Mother testified that (1) Son only paid 1/3 of the property taxes on the property and that she had to pay the remaining 2/3 of the amount owed; (2) she had to hire someone to take care of the yard; (3) she paid for the insurance on the property, not Son; and (4) she had to pay someone to cut down two dead trees in the yard after Son refused to cut them down. Son disputes this testimony.

Son testified that in addition to paying the insurance and taxes on the house, he performed various tasks in the home, such as finding someone to fix the toilet. He also testified that he drove Mother to the grocery store and to the doctor's office. Mother claimed that she had to rely on Son for transportation because Son never returned her car after he took it to have the brakes checked. On the contrary, Son

---

2. The Lifetime Agreement was never recorded.

3. Mother gave the limited power of attorney to Peggy Dove, whom Son did not trust. Jessica Dixon, Son's daughter-in-law, also testified that Son was afraid Dove would "gain grandma's house, take it away from her, put her in a nursing home, sell it and get the money."

testified that Mother thought there was a problem with the brakes, so he drove it to his house in order to test them but did not find anything wrong with them. Son also testified that he does not believe that Mother is capable of driving safely.

Despite their rocky relationship, Mother decided to convey her home to Son. She later claimed that the only reason why she did so is because he convinced her that if she did not take the property out of her name, Medicaid would seize it if she failed to pay her medical expenses. Son claims that his half-sister gave Mother this idea and that he had nothing to do with the decision to take the property out of Mother's name. Son testified that he gave Mother the option to convey the property to him or to his half-sister, but he did not care who received title. Ultimately, Mother chose to give the property to Son.

After preparing the deed,[4] Son drove Mother to a pawn-shop, where Mother signed the deed and the Lifetime Agreement. Mother remembered executing the deed and the Lifetime Agreement and testified that she knew what she was doing when she signed the deed.

Approximately a year-and-a-half later, Son executed and delivered a document to Mother purporting to leave the home to her when he died. Son drafted this document after Mother expressed concerns about Son's wife, rather than Mother's daughter, inheriting an interest in the property.

After a confrontation in 2001, Mother asked Son to leave her home. Later, Mother changed the locks to the house, preventing Son from entering the home. Mother also requested that Son re-convey the title to the property to her. Son refused and Mother filed this action.

The master-in-equity declared Son the owner of the property in fee simple absolute. The master found there was "no evidence that the deed was the result of duress or coercion, or that [Son] exerted undue influence over [Mother] in the execution or procurement of the deed." Further, the master found that Mother "fully appreciated the nature of the conveyance and its legal effect," and she "recalled the location and circum-

---

4. According to Son, he prepared the deed and the Lifetime Agreement as Mother instructed.

stances of its execution, as well as the names of the witnesses." Therefore, the master determined that Mother failed to establish that the deed should be set aside. Mother appealed the master's decision, and pursuant to Rule 204(b), SCACR, this Court certified the case from the court of appeals.

Mother raises the following issues for review:

I. Did the master err in refusing to set aside the deed for undue influence or failure of consideration?

II. Did the master err in refusing to construe the transactions involved as to creating a life estate in Mother or imposing a trust for the benefit of Mother?

Son raised the following issue for review:

III. Did the master err in not barring Mother's claims under the statute of limitations?

### LAW/ANALYSIS

### Standard of Review

"An action to rescind a contract lies in equity." *Gibbs v. G.K.H., Inc.*, 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct.App.1993). When reviewing an equitable action, this Court may determine the facts in accordance with its own view of the preponderance of the evidence. *Thornton v. Thornton*, 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997); *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

### I. Setting Aside the Deed

### A. Failure of Consideration

Mother argues that the deed conveying the house to Son should be set aside because Son failed to take care of her according to the Lifetime Agreement, which was incorporated into the deed to provide additional consideration. We hold that even if the Lifetime Agreement was properly incorporated into the deed, the deed should not be set aside for failure of consideration.

We first determine whether the Lifetime Agreement was properly incorporated into the deed. As a general rule,

when a deed is unambiguous on its face, we look only to the four corners of the document. *See Klutts Resort Realty Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977) (holding that a court will not examine extrinsic evidence to interpret a contract absent an ambiguity). If the vital terms of a contract are ambiguous, then, in an effort to determine the intent of the parties, the court may consider probative, extrinsic evidence. *South Carolina Dept. of Nat. Resources v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 303 (2001).

■ In the present case, the stated consideration is "five dollars and *other love and consideration*," which we find to be ambiguous. In addition, the Lifetime Agreement is probative of the parties' intent because the Lifetime Agreement and the deed were executed at the same time. This Court has held that when multiple documents are executed contemporaneously in the course of and as a part of the same transaction, the Court may consider and construe the instruments together in order to ascertain the intention of the parties and the terms of the agreement. *Café Associates, Ltd. v. Gerngross*, 305 S.C. 6, 10, 406 S.E.2d 162, 164 (1991); *Klutts*, 268 S.C. at 89, 232 S.E.2d at 25. Because the Lifetime Agreement and the deed were executed contemporaneously, and the Lifetime Agreement helps to explain the ambiguous phrase in the deed which recites consideration as: "five dollars and other love and consideration," we find that the Lifetime Agreement was incorporated into the deed as consideration for conveyance.

■ Having determined that the Lifetime Agreement provides additional "other consideration" under the deed, we next decide whether the consideration of the agreement failed warranting this Court setting the deed aside. When deciding whether there has been a failure of consideration, this Court has held that "the slightest consideration is sufficient to support the most onerous obligation...." *First National Bank of South Carolina v. Wade*, 245 S.C. 426, 431, 141 S.E.2d 102, 104 (1965) (internal quotations and citations omitted). Moreover, absent fraud and deception, the Court will not "deprive [the contract] of validity." *Id. See also All v. Prillaman*, 200 S.C. 279, 292, 20 S.E.2d 741, 747 (1942) (holding that

setting aside a deed is not the proper remedy for failure of consideration absent fraud or deceit).[5]

We find that the consideration did not fail, and that even if it had, the proper remedy would not be to set the deed aside. The agreement provided that Son would "maintain and care for" Mother's property, as well as, "at a time determined by [Mother] . . . care for [Mother's] needs as necessary." We find that Son cared for Mother and her property. Although Mother was not satisfied with the amount of care Son provided, we do not find that he failed to act in accordance with the terms of the Lifetime Agreement. Mother does not deny that Son was her main source of transportation. In addition, some time after the parties signed the Lifetime Agreement, Mother changed the locks to her home, preventing Son from caring for her in her home. We have held that a party who prevents a condition of a contract cannot seek relief by relying on the other party's resulting nonperformance. *Champion v. Whaley,* 280 S.C. 116, 311 S.E.2d 404 (1984).

Therefore, we hold that Mother's cause of action for failure of consideration is without merit and we affirm the master's decision on that issue.

## B. Undue Influence

In the alternative, Mother argues that because she and Son were in a confidential relationship, Son had the burden of proving that he did not unduly influence her, and that he failed to meet that burden. We agree that Mother and Son shared a confidential relationship, but we do not find that Son failed to meet his burden.

### 1. Confidential Relationship

To show a "confidential relationship" existed between the grantor and grantee, the grantor must present adequate evidence that she has placed her "trust and confidence in the grantee, and the grantee has exerted dominion over the grantor." *Brooks v. Kay,* 339 S.C. 479, 489, 530 S.E.2d 120, 125 (2000); *Middleton v. Middleton,* 300 S.C. 402, 404, 388 S.E.2d 639, 641 (1990); *Hudson v. Leopold,* 288 S.C.

---

**5.** Mother does not argue any fraud or deception as part of her failure of consideration cause of action.

194, 196, 341 S.E.2d 137, 138 (1986). Once a contestant has proven a confidential relationship existed at the time of conveyance, the burden shifts to the grantee to prove that the contestant's conveyance was not the product of undue influence. *Brooks*, 339 S.C. at 489, 530 S.E.2d at 125.

 To begin, we find that Mother and Son were in a confidential relationship at the time of conveyance. First, the parties are related. Although this Court has declined to hold that a familial relationship, alone, is sufficient evidence of a confidential relationship,[6] a familial relationship certainly *supports* an argument that a confidential relationship exists. Second, Mother gave Son a limited power of attorney, suggesting that she placed some trust and confidence in him to make decisions for her in case she had to be hospitalized. Third, after the deed was recorded, Mother and Son opened a joint bank account consisting entirely of Mother's money. This account was created by Mother for Son to use for her benefit upon her inability to access that money on her own. Fourth, Son prepared all of the documents in question, including the deed and the Lifetime Agreement. Moreover, Mother signed those documents without first consulting an attorney, trusting that Son had drafted them according to her wishes. Therefore, we hold that Mother and Son were in a confidential relationship.

## 2. Undue Influence

 We now turn to whether Son satisfied his burden to prove that he did not unduly influence Mother to convey him the property. We recently described the nature of undue influence:

> the influence must be the kind of mental coercion which destroys the free agency of the creator and constrains him to do things which are against his free will, and that he would not have done if he had been left to his own judgment and volition.[7]

---

6. *Hudson*, 288 S.C. at 196, 341 S.E.2d at 139.

7. Most of our jurisprudence on the issue of undue influence involves a contestant seeking to set aside a will, rather than a deed, as does the case quoted above; nonetheless, we find no reason why this discrepan-

*Russell v. Wachovia Bank, N.A.,* 353 S.C. 208, 217, 578 S.E.2d 329, 333 (2003). The influence must be of such a degree that it prevents the grantor's exercise of judgment and free choice. *Id.* Moreover, a showing of general influence is not tantamount to undue influence. *Calhoun v. Calhoun,* 277 S.C. 527, 531, 290 S.E.2d 415, 418 (1982). For this Court to void a conveyance of land, a contestant must show that the undue influence was brought directly to bear upon the conveyance. *Russell,* 353 S.C. at 219, 578 S.E.2d at 335.

We find that Mother's free will was never overcome. At trial, the master found that Mother was "very clear about what she was doing," "fully appreciated the nature of the conveyance and its legal effect," and "recalled the location and circumstances of its execution, as well as the names of the witnesses." In addition, the record indicates that Mother is a strong-willed woman who, by her own motivation, decided to convey the property to Son in an attempt to prevent a potential creditor from seizing her property.

Although it is questionable whether Mother made a good decision when she conveyed her property to Son, we find the decision was one of her own free will. Accordingly, we hold that Son proved that he did not unduly influence Mother.

## II. Life Estate/Trust

 Mother argues that if this Court does not set aside the deed, it should hold that Mother is the beneficiary of a trust or that she holds a life estate in the property in question, with a remainder to her two children. We disagree.

Mother raised this issue for the first time in a Rule 59, SCRCP, motion. We hold that this issue is not preserved for review. *See, e.g., Eaddy v. Oliver,* 345 S.C. 39, 44, 545 S.E.2d 830, 833 (Ct.App.2001) (holding that an issue first raised in a post-trial motion is not preserved for appellate review).

cy should change our analysis. *See First Nat'l Bank of Appleton v. Nennig,* 92 Wis.2d 518, 285 N.W.2d 614, 623 (1979) (holding that "undue influence in the execution an of *inter vivos* conveyance is proved in the same way that undue influence is proved in the execution of a will"); *Lyons v. Elston,* 211 Mass. 478, 98 N.E. 93 (1912) (holding that the analysis is the same regardless of whether the underlying document sought to be set aside on the grounds that the plaintiff was unduly influenced is a will or a deed).

## III. Statute of Limitations

Son argues Mother's claims of undue influence and failure of consideration are barred by the statute of limitations set forth in South Carolina Code Ann. 15–3–530(1) and (7) (Supp.2003). We hold that section 15–3–530 does not bar these claims.

We first turn to Mother's undue influence cause of action. Son argues that section 15–3–530(7), which applies to actions for fraud and those actions considered fraud by a court of chancery before 1870, serves to bar Mother's undue influence claim. We disagree.

First, Mother did not plead or prove the existence of fraud in this case; therefore, we hold section 15–3–530(7) does not apply. Second, a claim alleging undue influence is an equitable action. *Bullard v. Crawley,* 294 S.C. 276, 284, 363 S.E.2d 897, 902 (1987). Further, "[a]n action to rescind a contract lies in equity." *Gibbs v. G.K.H., Inc.,* 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct.App.1993). This Court has held that the statute of limitations does not apply to actions in equity. *See Anderson v. Purvis,* 211 S.C. 255, 44 S.E.2d 611 (1947); *Anderson v. Purvis,* 220 S.C. 259, 67 S.E.2d 80 (1951) (holding that the Court's power to do equity transcends the limitations of the statute of limitations). Because Mother's undue influence claim is an action in equity, we hold that the statute of limitations is inapplicable.

We next turn to Mother's failure of consideration cause of action.[8] Section 15–3–530(1) places a three-year statute of limitation on contract actions; however, the discovery rule applies to that section. *Santee Portland Cement Co. v. Daniel Int'l Corp.,* 299 S.C. 269, 271, 384 S.E.2d 693, 694 (1989), *overruled on other grounds Atlas Food Sys. and Servs. v. Crane Vendors Div. of Unidynamics Corp.,* 319 S.C. 556, 462 S.E.2d 858 (1995). The discovery rule provides that the statute of limitations does not begin to run until a person using reasonable diligence knew or should have known the

---

8. We have held that, absent a showing of fraud or deceit, setting a deed aside is not the correct remedy for failure of consideration. *All,* 200 S.C. at 292, 20 S.E.2d at 747. The proper remedy, therefore, is damages, a remedy in law. Accordingly, Mother's failure of consideration cause of action is subject to the statute of limitations.

existence of the claim. *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996); *Snell v. Columbia Gun Exchange, Inc.*, 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981). A plaintiff should have known the existence of a claim if the facts and circumstances of an injury would put a person of common knowledge and experience on notice of that claim. *Cline v. J.E. Faulkner Homes, Inc.*, 359 S.C. 367, 371, 597 S.E.2d 27, 29 (Ct.App.2004).

In the present case, the Lifetime Agreement was signed more than three years before Mother brought the underlying claims. Nevertheless, Mother's allegations that Son failed to provide her care were based upon facts not known to her at the time she signed the Lifetime Agreement. We find that Mother brought her claim within three years of the time that she discovered the incidents and facts supporting that claim. Therefore, we hold that the statute of limitations does not bar Mother's failure of consideration claim.

### CONCLUSION

For the foregoing reasons, we affirm the master-in-equity's ruling, holding that Son is the titleholder of the property in fee simple absolute.

**AFFIRMED.**

MOORE, WALLER and BURNETT, JJ., concur.
PLEICONES, J., concurring in result only.